ROCKLAND WATER COMPANY *vs.* DAVIS TILLSON.

Knox. Opinion March 1, 1879.

*Easement. License. Condition. Waiver. Quarry. Waste. Damages.*

Where a water company was authorized by their charter "to take and hold, by purchase or otherwise, any land or real estate for laying and maintaining aqueducts;" and were required, "within six months from the time of taking" "to file in the registry of deeds" "a description thereof and a statement of the purposes for which taken;" "to pay all damages sustained by persons by the taking of any land, or excavating through any land for the purpose of laying down pipes;" and if the parties "could not mutually agree upon the sum to be paid, the mode of recovering the same was provided in the charter:" *Held*, that a writing given by a land owner—through whose land the company made an excavation for their pipes—to the company, therein acknowledging the receipt of a specified sum "in full for damages done land or otherwise in completing the works of the company," conveys no land or interest therein; but is simply an acknowledgment of the payment of damages for an easement taken.

Also *held*, that the company does not hold the easement by virtue of the receipt, or by a license, but by authority of its charter.

Also *held*, that the return to the registry of deeds provided in the charter, if required when an easement only is taken, is not a part of the taking, but a condition precedent to such taking; and it being for the benefit of the land owner, it may be, and is waived as to him, by a mutual agreement upon the amount of damages and a receipt thereof.

Where the land, through which a chartered water company has made an excavation, under their charter, for their pipes, contained lime rock, and the person, who owned the land at the time of the taking, conveyed an undivided interest in the quarry only, in consideration of the opening of the same, the grantee has the same rights only as the grantor.

Where, in trespass on the case, the injury complained of is the taking away the support of a chartered company's aqueduct pipe, by undermining it and the destruction of a portion of it, the action is in the nature of waste; and all the damages which are the proximate result of the injury, whether present or prospective, must be recovered in this one action.

The rule of damages in such action is the diminution in value of the property injured, not exceeding its real worth.

ON EXCEPTIONS by both parties.

ACTION ON THE CASE for injuries to the plaintiffs' aqueduct. Writ dated September 23, 1875.

Plea, general issue and brief statement which alleged, *inter alia*, that the aqueduct was constructed on land of Orris B. Ulmer, without right and against his will; that at the time of the supposed injury, the defendant and one Cornelius Hanrahan owned in common with Ulmer, the limestone in and upon said land, with the lawful right to dig and remove said limestone and the soil thereupon; and that if any injury was caused to the aqueduct by the defendant, it was done in the prosecution of the rightful use and occupation of said land, and in the digging and removal of the soil and limestone in behalf of himself, Ulmer, and Hanrahan.

The plaintiffs put in their charter, approved August 20, 1850, together with its amendments, which are sufficiently recited in the opinion.

Plaintiffs' exceptions:

L. L. Buckland, surveyor appointed by the court, presented a plan and testified in substance, among other things, that he surveyed the location of the plaintiffs' aqueduct from the lake, which is a mile from the Ulmer field, where he found the pipe supported over the quarry by a truss bridge—a temporary structure. The rock had been excavated from beneath the bridge, which is about fifty feet long. It was thirty-one feet from the pipe to the bottom of the quarry. East of the bridge the quarry had been excavated and the dirt fell off shelving, exposing the pipe where no protection had then been provided.

That from the east end of the bridge across the excavation to the eastern line of the eastern excavation it is about seventy feet; that across this seventy feet, the crest line is about over the pipe, from which point it slopes down to the edge of the quarry; and that some kind of protection to this part of the pipe is necessary.

That he surveyed a certain line (shown on the plan) commencing some two hundred feet northerly of the north end of the bridge, where he dug down to the pipe; thence southerly, to avoid the quarry, around to where it strikes the line of the pipe again; that this is the proposed line, for the change of the location of the

pipe, so as to avoid the Ulmer quarry; that it would clear all present quarrying operations, and would be less expensive, to thus carry the pipe around, than the building of a permanent bridge would be, to sustain it over the quarry; that he estimated the expense of this change, without land damages, at $1,264; that he had also made an estimate that it would cost $2,000 to build a permanent bridge, sufficient to sustain the pipe across the whole quarry, including that portion of the quarry now partially opened; that the bridge now built is about fifty feet long, and that it would require about seventy feet more.

It appeared that the plaintiffs laid their water pipe through the Ulmer field, in 1851, with the knowledge and without the objection of Orris B. Ulmer, who then owned it, before any quarry in that field had been opened; and that they have ever since maintained it there.

The plaintiffs also put in a receipt signed by Orris B. Ulmer, dated November 9, 1852, of the following tenor:

" Received of the Rockland Water Company, thirty-five dollars in full for damages done land or otherwise in completing the works of said company."

It further appeared that the defendant opened the quarry and made the excavations under the pipe, commencing in the summer of 1869; that the first injuries to the pipe, by reason of the undermining and blasting out of the lime rock, occurred in November, 1869; that the defendant built the temporary structure for the support of the pipe; that the plaintiffs, during the fall of 1869 and the summer of 1870, expended the sum of $173.36 for new pipe and repairs of pipe, made necessary by injuries inflicted upon it by the defendant.

The plaintiffs proposed to prove by further testimony that the pipe would be in constant peril where it now is, by reason of the excavations and undermining done by defendant prior to the date of the writ; that it would be necessary to remove it, or to build some more expensive structure to support and protect it; but the court rejected all further evidence on this subject, and ruled that the plaintiffs in this action could recover only the amount of money actually expended prior to the date of the writ

for repairs done by them, which were made necessary by the acts of the defendant, and that, if more permanent supports and security for the pipe were necessary, plaintiffs could not recover the prospective cost of them, but must wait until the expense was actually incurred before they would be entitled to recover it. Plaintiffs claimed to recover not only what they had actually expended, but the future cost of sustaining and protecting the pipe over the quarry; and if it would be cheaper to remove it to a new location, they would be entitled to recover the cost of such removal.

These propositions were overruled.

The plaintiffs made eight requests for instructions, which, on account of the view taken by the court, need not be reported here.

The remaining material facts relating to the plaintiffs' exceptions appear in the opinion.

Defendant's exceptions:

The defendant put into the case a deed of warranty, from Orris B. Ulmer to Cornelius Hanrahan, dated June 15, 1869, duly acknowledged and recorded, of "one undivided quarter of all the lime rock or other minerals within" certain parcel of land including the locus of injury. Also a similar deed from said Ulmer to the defendant.

The deeds were introduced for the express purpose of showing that if the plaintiffs had a license to lay the aqueduct over the *locus in quo*, it was revoked by these conveyances; and further to show revocation, David Tillson, the defendant, testified as follows:

"Before commencing to go under the pipe at all I called the attention of the president of the water company to the fact, and told him I should do so; that, while we would avoid in any possible way injuring the pipe, it would be safer to take it up and move it to the south as indicated in that plan, though there was no need of taking it so far south. I notified Mr. Farnsworth, the president of the company, and asked him to take it away. He went there with Mr. I. K. Kimball, and I think Mr. Berry. I think the other gentlemen advised the change. Mr. Farnsworth afterwards refused to make it. I gave that notice to remove the

pipe before we commenced digging under the pipe. We were digging in that vicinity. I think we had not uncovered the pipe."

Defendant also put in deed of Davis Tillson to Cobb lime company, dated April 24, 1871.

The presiding judge, in his charge to the jury, gave them the following instructions among others, viz :

" They (the plaintiffs) have placed a pipe over the land of Mr. Ulmer. The first question is whether it is legally there or not. They were there under the charter. Their charter provides that they may take land by filing within six months, in the office of the register of deeds, a description of the land and a statement of the purpose for which it is taken. They have not done so, as I understand. It is not alleged that they have done so. They have therefore omitted to do what they were bound to do. But the question is whether this defendant or Ulmer, under whom he claims, have any right to question their acts on that account.

" It seems that Ulmer owned the land ; that while the works were being built and the pipe laid he saw daily what was being done, saw where it was laid, knew all about it, and after it was done received what he was willing to receive at any rate for all the doings of the corporation. Now, for the purposes of this case, if you find the facts to be so, and I don't know as they are denied as told by Ulmer, I instruct you that Ulmer cannot interfere with these works. It would be inequitable. All the expenses had been incurred, and he had received what he had received (whether too much or too little is of no consequence) as compensation for what was done. I say, therefore, if you find the facts to be so, he is estopped from setting up any adverse claim, or for interfering with their works.

" Now he conveyed the land to Tillson as it was, with these easements upon it, if you term them so, and the easements he implied might remain. He gave the General (Tillson) no rights which he did not have himself. The General undertook to work a lime quarry. Now each of these are valuable rights ; the plaintiff corporation owning the right to convey water into the city,

and Tillson and Ulmer owning a valuable lime quarry. Both have rights, and the rights of both should be respected. While on the one hand the plaintiffs should not be interfered with in the enjoyment of their rights, the defendant should not be debarred from the exercise of his rights. But, if in the exercise of his rights he injured the pipe of the plaintiffs, or delayed the transmission of water to the city, he would be liable for such interference. That he did some acts is not denied; that he more or less interfered with the works of the plaintiffs I do not understand to be denied. While he had a right to use his own property, to dig, to blow, or whatever he did, he must be careful not to injure the rights of the plaintiffs, because the rights of both are to be protected. One has a right to his works, the other to his land. . . The defendant must make the plaintiffs good for all injuries directly flowing from the act done by him during the time when he held the title."

The jury returned a verdict for the sum of $173.36 and interest.

*A. P. Gould & J. E. Moore,* for the plaintiffs, on the question of damages, cited: *Cumb. & Oxf. Canal Co.* v. *Hitchings,* 65 Maine, 140. *Bonomi* v. *Blackhouse,* 96 E. C. L. 622. *Troy* v. *Cheshire R. R. Co.,* 23 N. H. 83, 104. *Fowler* v. *New Haven & Northampton Co.,* 107 Mass. 352. *Same* v. *Same,* 112 Mass. 334. *Warren* v. *Bacon,* 8 Gray, 397, 402, 405. *Tetter* v. *Beale,* 1 Salk. 11. S. C. Ld. Raymond, 339. Shear. & Redf. on Neg. § 597. Sedg. Dam. (6 ed.) 123, 109*. Wash. Ease. (2 ed.) 477, 560. *Warner* v. *Bacon,* 8 Met. 405. *Howell* v. *Young,* 5 Barn. & Cr. 259, 267. *Hodsoll* v. *Stallebrass,* 39 E. C. L. 178, 180. *Whitney* v. *Clarendon,* 18 Vt. 258.

On defendant's exceptions:

Plaintiffs had an easement not a license. Wash. Ease. (2 ed.) 601, 513*.

The requirement to record location is directory merely, but if imperative, it was waived. *Moore* v. *Boston,* 8 Cush. 274, 276, 277. *Wamesit Pow. Co.* v. *Allen,* 120 Mass. 252, different from case at bar. So is *Willson* v. *Lyman,* 119 Mass. 174. *Hazen* v. *Boston & M. R. R. Co.,* 2 Gray, 574, 579, admits principle contended for by plaintiffs. No conflict in Massachusetts cases.

That conditions may be waived, see 1 Wash. R. P. (2 ed.) 477, 354*. 1 Redf. Rail. (4 ed.) 392. *Hitchbock* v. *Dam. & Nor. R. R. Co.*, 25 Conn. 516. High Injunc. 397, notes and cases cited. *McClinten* v. *Pittsburg, &c., R. R. Co.*, 66 Pa. St. 404.

Conditions precedent may be waived. *Baltimore, &c., R. R. Co.*, v. *Highland*, 48 Ind. 381. But the statute was directory. *Veazie* v. *Mayo*, 45 Maine, 560, 564.

An easement runs with the land wherever acquired, and would be valid against Ulmer's grantees. Wash. Ease. (2 ed.) 29, 22*.

On estoppel. Big. Est. (2 ed.) 559. *Brooks* v. *Curtis*, 4 Law. (N. Y.) 283. *Marble* v. *Whitney*, 28 N. Y. 297. Big. Est. 527. *Ricker* v. *Kelly*, 1 Maine, 117. 2 Am. Lead. Cas. 682–706. Wash. Ease. (2 ed.) 63, 90, and cases in note 3. *Liggins* v. *Inge*, 20 E. C. L. 304, 309.

On rights of licensee. *Leferre* v. *Leferre*, 4 Serg. & R. 241. *Berrick* v. *Kern*, 14 Serg. & R. 267. *Ricker* v. *Kelly, supra*. *Clement* v. *Durgin*, 5 Maine, 9. Ang. Wat. (4 ed.) §§ 318–324. 3 Kent Com. (7 ed.) 557, 452*. Hill. Vend. (2 ed.) 131. *Wilmington, &c., R. R. Co.* v. *Butler*, 66 N. C. 540.

On dedication. *Morgan* v. *Chicago & A. R. R. Co.*, 10 Chic. Leg. N. 238. *Learned* v. *Learned*, 11 Met. 421, 423.

*A. S. Rice & A. G. Hall*, for the defendant, elaborately argued the following propositions :

I. The plaintiffs acquired no easement in or over defendant's land. Wash. Ease. 23. *Moore* v. *Copeland*, 2 Gray, 302. *Cork* v. *Stearns*, 11 Mass. 533. *Lund* v. *New Bedford*, 121 Mass. 286. They omitted to comply with the charter. *Wamesit Pow. Co.* v. *Allen*, 120 Mass. 352. *Wilson* v. *Lynn*, 119 Mass. 174. *Moore* v. *Boston*, 8 Cush. 274. 1 Redf. Rail. § 65. They only had parol license. *Gardiner* v. *Hazelton*, 121 Mass. 494. The receipt was protection from trespass. *Whitney* v. *Holmes*, 15 Mass. 152.

II. The license was revokable. Wash. Ease. 19. *Prince* v. *Case*, 10 Conn. 372. 2 Am. Lead. Cas. 682. *Benedict* v. *Benedict*, 5 Day, 464. *Morse* v. *Copeland*, 2 Gray, 302.

III. The instruction that it would be inequitable for licenser to interpose, implied that the license was irrevocable. Wash. Ease. 19. *Morse* v. *Copeland, supra.* Wash. Ease. 307. 1 Wash. R. P. 400. *Owen* v. *Field,* 12 Allen, 457. *Houston* v. *Laffer,* 46 N. H. 507. *Marston* v. *Gale,* 24 N. H. 176. Wash. Ease. 3, 64. *Hall* v. *Chaffre,* 13 Vt. 157. *Gardiner* v. *Hazelton,* 121 Mass. 494.

On estoppel. *Fisher* v. *Browning,* 4 R. I. 52. *Hamlin* v. *Hamlin,* 19 Maine, 141. *Gerrish* v. *Union Wharf Co.,* 26 Maine, 384. Estoppel could not affect defendant, who was not a party to it and who purchased the land without reservation, and, so far as appears, without knowledge of the license. *Stinchfield* v. *Emerson,* 52 Maine, 465. *Seidensparger* v. *Spear,* 17 Maine, 123. *Snow* v. *Moses,* 53 Maine, 546. *Cobb* v. *Fisher,* 121 Mass. 169. *Ricker* v. *Kelly,* 1 Maine, 117, not in conflict. See *Cook* v. *Stearns,* 11 Mass. 533.

Plaintiffs must comply with charter. Redf. Rail. § 65. *Wilson* v. *Lynn, supra. Wamesit Pow. Co.* v. *Allen, supra. Central Railway* v. *Hitfield,* 8 Dutch, 206.

IV. License was revoked by the conveyances by Ulmer. *Seidensparger* v. *Spear, supra. Fateria* v. *Smith,* 4 East. 107. *Cook* v. *Stearns, supra.* Wash. Ease. 6.

DANFORTH, J. This is an action for alleged injuries to the plaintiffs' aqueduct, constructed under an act of the legislature approved August 20, 1850, entitled, "An act to supply the people of Rockland with pure water." That such an act is so far for a public purpose as to authorize the taking of private property upon the "payment of a just compensation," is too apparent, and has been too long recognized to admit of doubt.

It is under this charter that the plaintiffs claim and its organization is admitted.

By § 3 the corporation "may take and hold by purchase or otherwise, any land or real estate necessary for laying and maintaining aqueducts, for conducting and discharging, disposing of, and distributing water, and for forming reservoirs."

By § 4 it is provided that, "said corporation, within six

months from the time they shall take any lands for the purposes of this act, shall file in the office of the register of deeds for the county or registry district wherein said lands lie, a description thereof and a statement of the purposes for which taken."

Section seven provides for the payment of " all damages that shall be sustained by any persons in their property, by taking of any land, or excavating through any land for the purpose of laying down pipes." It also provides the manner of recovering such damages when the parties do not agree upon the amount to be paid.

At the place of the alleged trespass the plaintiffs had taken an easement in the land by excavating through it and laying down their pipes.

To show that the damages for such an easement had been agreed upon and actually paid, a receipt from O. B. Ulmer, who was the owner of the land, was put in by the plaintiff. A question has been raised as to the force and effect of this receipt, but its proper construction can hardly admit of doubt. It is not under seal and does not of itself convey, or purport to convey, the land or any interest therein. It simply acknowledges the receipt of " thirty-five dollars in full for damages done land or otherwise in completing the works of said company."

As it covered all damages for completing the works of the company, and as, by completing such works, it must have taken the easement it now claims, the receipt is proof of payment of satisfactory damages for the easement taken. This will more fully appear from the fact that the damages received were the same in kind, if not in amount, as would have been assessed if the compulsory process provided by the act had been resorted to. Nor does the explanation offered in the testimony of the signer tend in any degree to change its effect.

It is, however, claimed that the plaintiffs acquired no right under their charter to this easement for which they had paid, as against the land owner, other than a license to enjoy the same, which might be revoked at will ; because they made to the registry of deeds no such return as the act requires.

It may be somewhat problematical whether in such case the act

requires any return whatever. The act evidently authorizes the taking of land, when necessary, or an easement only, when that is sufficient. The damages in section seven are to be paid "for land taken, or for excavating through any land for the purpose of laying down pipes." Though by our statutes the word land includes all interests therein, this act seems to treat land and an easement therein as two distinct things and requires a return to the registry of deeds only of the land taken and the purposes for which taken. The reason of this distinction is sufficiently obvious; for the easement taken is definite and certain in extent and purpose, while the land taken can only be made so by such return as the act requires.

But if otherwise, the return was such as could be and was waived by the land owner. It was not a condition precedent, for it was not required, nor could it be made until after the taking was accomplished; nevertheless it was a condition of the taking, and if not complied with, the owner might at his election reclaim his property. *Wilson* v. *Lynn,* 119 Mass. 175. *Wamesit Pow. Co.* v. *Allen,* 120 Mass. 352. *Lund* v. *New Bedford,* 121 Mass. 286.

These cases, however, differ materially from the one at bar. In neither had the damages been paid or assessed. Nor could they be, except by agreement with the land owner. Without such a return there was nothing definite to show what land or what interest had been taken, and hence no basis upon which to make an assessment. But it is obvious that this is a matter which concerns the land owner only, and therefore one which he can waive. It is only for the purpose of securing the "just compensation" required by the constitution, and if that is otherwise secured to the satisfaction of the land owner, it would seem to be sufficient. From the control which every owner has over his own property it follows that, when taken for a public or private purpose, it is at his own option to insist upon or waive his right to compensation, and if so, a condition prescribed by law, not as a part of the taking, but to secure the compensation, not only may be, but is waived when a satisfactory compensation is received. This is in accordance with the principle laid down in *Moore* v.

*Boston*, 8 Cush. 274, in which it is held that the land owner may at his election, confirm the taking and avail himself of the compulsory process provided for the recovery of his damages, though no return, as required, has been made. That case is recognized as good authority in *Wamesit Pow. Co.* v. *Allen, supra.*

If the owner had proceeded under the law for the assessment and recovery of his damages, obtained a judgment for and a satisfaction of them, it would hardly be pretended that such a proceeding would not have been an affirmation of and rendered valid the taking. An agreement upon the amount and a payment under that agreement can certainly be no less effective.

We have no occasion to deny the authority of the several cases cited and relied upon in defense to show that a parol license to use an easement upon the land of the licenser may, at any time, be revoked, even though the licensee may have been at expense in making necessary erections to render his easement available. They refer to private easements and rest upon the well established principle that such can be acquired, under statute, only by deed or prescription.

There is another class of cases, perhaps equally as numerous and authoritative, in which it has been held that one in the enjoyment of an easement upon the land of another may, by parol, release it, and be estopped to deny the legal validity of that release after erections and expenditures had been made in good faith, relying upon it. The distinction upon which these two classes of apparently, if not really, conflicting cases rests, is that the former refer to and depend upon the conveyance of an easement upon one's own land, while the latter are releases simply of an easement upon the land of the releasee. It is unnecessary to cite these cases, as they may be found collected and commented upon in 2 Am. Lead. Cas. 682–706. The former class are not applicable to the case at bar, for the reason that here the plaintiff claims the easement under its charter and not by any voluntary conveyance or license. The latter class has a bearing upon this, because they rest upon an estoppel amounting to a waiver. In these cases it is clearly held that by inducing one to make expenditures, it would be fraudulent to deny the truth of

the statements made, or to set up rights which have been released, as such inducements.

In this case no conveyance is claimed to have been made. The land owner had a right to the return, for the purpose of his remedy in the assessment of damages. He agrees upon and receives his damages without that. The most that can be said is, that here is a release of that right, and it can hardly be denied that it would be in him a fraud to set up a claim to that for which he has, been paid to his own satisfaction. In holding him to that release or waiver there is no violation of any principle of law in reference to conveyance or otherwise.

In *Cushman* v. *Smith*, 34 Maine, 247, it is held by necessary implication that where land is taken for a railroad an action of trespass will not lie if damages are paid. If such an action will not lie, the land owner could hardly be justified in tearing up the track.

In *Hazen* v. *B. & M. Railroad*, 2 Gray, 579, Thomas, J., says, " In cases where the land owner has received his damages for the road as actually constructed, he may be estopped to deny the right of the corporation to use the land in fact taken and used."

In *Clement* v. *Durgin*, 5 Maine, 9, it was held that the right to flow lands is given by the statute and that the damages for flowing may be relinquished by parol. If, then, the damages resulting from an easement may be released by parol without detriment to that easement, it would seem that an agreement for, and receiving the pay, should be held as a waiver of one of the conditions of the taking.

In this case it is not necessary to decide what effect the acts of Ulmer may have upon a subsequent purchaser without notice. The defendant, at the trial, does not appear to have put his defense upon that ground. The deed was given in evidence, simply, as the case finds, to show a revocation of a license.

Besides, he was the purchaser of an undivided interest in the quarry only, and became so far a tenant in common with the owner, and the consideration of his deed was the opening of the quarry.

Thus his position is that of Ulmer and his rights the same, and his exceptions must be overruled.

The plaintiff has also filed exceptions raising a question as to the correctness of certain rulings in excluding testimony and refusing instructions requested and instructions given upon the question of damages.

The action is for an injury to the plaintiffs' easement across the land described in their writ, for the purpose of carrying water in an aqueduct, including the materials necessary for its use. The injury complained of is the taking away the support of the pipe by undermining it, and the destruction of a portion of it.

It appears from the exceptions that, " the sum of $173.36 had been expended for new pipe, and repairs of pipe, made necessary by the injuries inflicted upon it by the defendant ; " and that it was " proposed to prove by further testimony that the pipe would be in constant peril where it now is, by reason of the excavations and undermining done by the defendant, prior to the date of the writ ; and that it would be necessary to remove it, or to build a more expensive structure to support and protect it ; " but the court rejected all further evidence on this subject, and ruled that the plaintiffs in this action could recover only the amount of money actually expended, prior to the date of the writ, for repairs done by them, which were made necessary by the acts of the defendant," and " that, if more permanent repairs were necessary, plaintiff could not recover the prospective cost of them, but must wait until the expense was actually incurred before they would be entitled to recover it."

It also appears that eight different requests for instructions were refused.

The report of the evidence filed by the defendant in this case is made a part of the case, so far as it may modify this bill of exceptions. That report shows that some particular evidence was offered by the plaintiffs and excluded. This ruling, taken in connection with other testimony appearing in the report, does not appear to be objectionable. It does not appear from the report whether this testimony offered, as shown by the bill of exceptions, was in fact offered or not offered. Hence the exceptions in this

respect cannot be considered as modified, but must stand as we find them. It further appears that, in the course of the trial, the court " ruled that the plaintiffs can only recover in this action for expenses incurred to repair damages actually sustained in consequence of the acts of the defendant." If we are to understand by the phrase " expenses incurred" such as had been paid, this ruling would be consistent with that excluding the offered testimony.

Thus the exceptions, modified as they are by the report of the testimony, present the single question whether the plaintiffs can recover all the damages caused by the defendant's wrongful act in this action, whether such injuries have been repaired in full, or otherwise.

The general rule undoubtedly is, that no damages can be recovered which have accrued, or may accrue, subsequent to the date of the writ. This, like most general rules, may be subject to exceptions. In the case of a personal injury prospective damages may be recovered when shown by sufficient testimony, if they could not be avoided by reasonable care and skill.

Another equally general rule is that a second action cannot be maintained for damages resulting from a single act. This rule may have its apparent exception, as when one erects a nuisance upon the land of another. In such case the injured party would recover damages only up to the date of the writ, and could maintain a separate action for each day the wrong should be permitted to continue. *Russell* v. *Brown*, 63 Maine, 203. *C. & O. Canal Co.* v. *Hitchings*, 65 Maine, 140.

These exceptions, however, are apparent rather than real. Both classes of cases rest upon the same principle, and are governed by the same rule in the assessment of damages. In all of them the plaintiff recovers for such damages as legally follow the wrongful acts set out in the writ. In the case of a personal injury the act complained of is complete and ended before the date of the writ. It is the damage only which continues, and is recoverable because it is traced back to the act; while in the case of a nuisance it is the act which continues, or rather is renewed day by day. The duty which rests upon the wrong-doer to remove

a nuisance, causes a new trespass for each day's neglect. The difference results from the different nature of the acts. The one is destruction or waste of property, the other a creation or addition to it. While to the latter the duty of removal is attached, from the former, for obvious reasons, no duty results but that of compensation. This difference is illustrated in *Canal* v. *Hitchings*, above cited. See, also, *Lamb* v. *Walker*, reported in 18 Albany L. Jour. 131.

The injury complained of in the case at bar is in the nature of waste. The acts complained of were complete and ended before the date of the writ. Hence whatever damages the plaintiffs are entitled to recover must be recovered in this action. As the act is not a continuing one, no new action can be maintained. If the damages are continuing, testimony showing that fact, if offered, should be admitted.

In such a case as this, the test to be applied is that recognized in *Canal* v. *Hitchings.* "Whatever diminution there is in the value of the property by reason of the trespass, is an element of damage." In that case, at the close of the opinion, it is said, "For an injury in the nature of waste, it would have been appropriate. For an injury resulting from a continuing nuisance, it was inappropriate." If the property was wholly destroyed, its value would be the test of damages; if partially destroyed, its diminution in value.

It will be readily seen from this view, that the cost of repairs is not to control, and may not even throw any light upon the question of damages. The plaintiff may repair in his own way, and thus make the property very much more or less valuable than it was before; or, if no repairs were made or "expenses incurred" in consequence of the injury, the damages recoverable would still be the same.

It will also appear that, while the testimony showing the cost of bridging, and the increased expense of supporting the pipe, if confined to the excavation made by the defendant, as well as that of removing it to another place, was admissible, the requests for instructions in relation to those matters were properly refused. They involve questions of fact, rather than of law. It may be

that the aqueduct was not worth repairing in any of the methods suggested, and if the jury should conclude that it was, it would be for them to say what would be the most judicious course to adopt, for the purpose of fixing the damages. While the plaintiffs would have the right of election as to the method or kind of repairs, the aqueduct could not be increased in value at the expense of the defendant, and the testimony in this respect could only be used for the purpose of showing the actual injury to the property and whether entire or only partial destruction. It does not appear that the plaintiffs were under any legal obligation to the public, or otherwise, to continue the aqueduct. If they were, the case of *Troy* v. *Cheshire R. R. Co.,* 23 N. H. 83, in which the plaintiff was under obligation to support and continue the road at whatever expense, would be applicable. In that event, the plaintiffs would not only recover the cost of restoration, but the increased cost of support, if such increase was made necessary by the trespass. Still, the whole damage must be recovered in one action, as it would be the result of a complete and not a continuing trespass.

If, however, the value of the aqueduct would render the necessary repairs judicious, and the best method of repair would leave it in a more exposed condition or with a less permanent support, then the increased expense of future support as shown by the testimony would be an element of damage.

Taking all these matters into consideration, the jury are to judge as reasonable men, whether any, and if so, what repairs should be made, and from this the actual injury to the property, and assess the damages accordingly. The result is, that, by the instructions given and withheld, they were evidently confined within too narrow limits, and the plaintiffs' exceptions must be sustained.

*Plaintiffs' exceptions sustained.*
*Defendant's exceptions overruled.*

APPLETON, C. J., VIRGIN, PETERS and LIBBEY, JJ., concurred.