JONES v. KRAMER.

(Filed November 24, 1903.)

WATERS AND WATER-COURSES—*Damages—Measure of Damages.*

> In an action for damages for the temporary obstruction of a water-
> way, the measure thereof is the loss of crops occasioned thereby
> up to the time of the bringing of the suit.

ACTION by T. B. Jones and others against Kramer Bros. &
Company and others, heard by Judge *Frederick Moore* and a
jury, at November Term, 1902, of the Superior Court of
HYDE County. From a judgment for plaintiffs the defend-
ants appealed.

*Rodman & Rodman, Small & McLean* and *S. S. Mann,* for
the plaintiffs.
*George W. Ward,* for the defendants.

CLARK, C. J. The features of this case are very much
those of *Shaw v. Etheridge,* 48 N. C., 300, and *Hair v. Down-
ing,* 96 N. C., 172. David M. Carter owned a large body of
land in Hyde County, through which he cut a canal for drain-
age purposes, two or three miles long, ten or twelve feet wide
and varying from two to seven or eight feet deep, to Alligator
River. In 1867 he sold the upper or dominant part to the
plaintiffs' ancestor, from whom it passed to the plaintiffs.
The lower or servient part afterwards became the property
of the defendants' grantors. In 1899 the canal was cleaned
out and repaired at the joint expense of the plaintiffs and the
lower riparian proprietors, one of whom, in November, 1899,
sold the timber off his land to the defendants Kramer Bros.
& Company, with privilege to use the canal for the purpose
of floating the logs. The said company employed one Wat-

son to get out the timber, paying him so much per thousand feet, and directed him to put the logs into the canal. He began to do so about 16 August, 1900, and the summons herein issued 3 October, 1900. The plaintiffs contend that the work resulted in obstructing the canal and flooding the plaintiffs' land. The defendants' evidence shows that Watson acted under Kramer Bros. & Company's directions, and they are liable for his acts. *Davis v. Summerfield,* at this term.

If the plaintiffs were entitled to recover for permanent damages they could recover for any act of damage committed prior to 3 October, 1900 (date of summons), and any consequences flowing from such prior act down to the trial, but not for any injuries inflicted subsequent to that date. 2 Sutherland Damages (2d Ed.), sec. 1038. But that is not this case. The *locus in quo* where the logs were rolled into the canal and the obstruction was caused was not on the plaintiffs' land, and they announced in open Court that they did not claim for alleged injuries to the canal as distinguished from the land and crops, and further that they did not claim that there was any injury to the crop of 1900. The only damage shown, therefore, upon the plaintiffs' evidence is ponding water back, sobbing their land, and thereby injurying their land and crops in 1901 and 1902. This ponding back and injury were subsequent to the bringing of the writ, and damages for such injury cannot be recovered in this action. Woods Mayne on Damages, sec. 109. It is true the plaintiffs claim that the canal was obstructed and made shallower by the defendants' acts prior to the summons, but they admit no damages to them accrued therefrom prior to the writ. Such an obstruction did not necessarily cause the ponding back and water-sobbing the plaintiffs' land and injury to their crops in 1901 and 1902, for the obstruction might have been removed and the canal repaired before any ponding back and

injury in 1901. It was the failure to do this, and the consequent ponding back and injury in 1901 and 1902, which is the ground of action. It is immaterial when the obstruction to the canal was made, since the plaintiffs say they do not sue for that. There is no permanent damage to the plaintiffs' land either alleged or shown, for the water-sobbing can be relieved by removing the obstruction and cleaning out the canal so that it can drain the plaintiffs' land as before the obstruction was made.

The amended complaint avers that by reason of the obstruction to the canal complained of, "the waters which would have naturally flowed through the same from the land of the plaintiffs were obstructed and dammed and backed up on the land of the plaintiffs, greatly damaging said land of the plaintiffs, *causing said land to be less productive and prevented the proper drainage of the same.*" This lessened production is admitted not to have occurred in 1900. The obstructed drainage which caused it is an abatable nuisance, as in *Shaw v. Elheridge, supra,* and the measure of the damage accruing therefrom in 1901 and 1902 is the lessened production—the loss in the crops for these years. *Adams v. Railroad,* 110 N. C., 326. It would not be the diminished value of the land, since that will be restored by removal of the obstruction, which is not permanent, as in a case of a railroad embankment or other work of public improvement, as in *Ridley v. Railroad,* 118 N. C., 996, 32 L. R. A., 708; *Mullen v. Canal Co.,* 130 N. C., 496; or a mill-dam, as in *Burnett v. Nicholson,* 86 N. C., 99, in which the plaintiff was allowed to recover the annual loss from such permanent injury to the land down to the trial; and now the statute provides, as to railroads, a recovery once for all of the amount of such permanent damage, to avoid recurring suits every three years *ad infinitum.* But that principle has no application to damage sustained from an abatable nuisance.

Aside from this error as to the measure of damages, tho Court should have further directed a verdict against the plaintiffs because the action was prematurely brought.

Error.