MAST v. SAPP.

(Filed March 13, 1906).

*Accrual of Cause of Action—Death—Survival of Cause of Action—Executors and Administrators — Heir — Injury and Death Simultaneous—Damages.*

1. Where a cause of action for damages to land accrued in the lifetime of the testator or intestate, or in other words, the injury was committed during that time, it survives to his executor or administrator; if it was committed after his death, the right of action would belong to the heir or devisee.

2. When the right of a party is once violated, even in ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete. The recovery in such a case will embrace all damages resulting from the wrongful act.

3. Where the wall of a city reservoir was undermined and fell, by reason of its faulty construction, on the lot of defendant's intestate and struck her house, the first injury was sustained and the wrong was complete just as soon as the wall fell and struck her house, and her cause of action immediately arose for all ensuing damage of which the injurious act was the efficient cause.

4. If the injury developed in the lifetime of defendant's intestate, who was killed in the house and the damage followed in an unbroken sequence as the direct and proximate result of it, the defendant administrator is entitled to recover the fund paid by the city for the property destroyed belonging to his intestate.

5. In a contest between the heir and the personal representative to determine the rightful claimant to a fund paid by the city for destroying the intestate's house by its reservoir falling and crushing it, the question is not whether the intestate survived the destruction of her property, but whether the injury was committed before or after her death.

6. If the destruction of the house and the death of the intestate occurred at one and the same instant of time, the heir would not be entitled to the fund in dispute.

CLARK, C. J., dissents.

ACTION by D. P. Mast, Guardian of Fred Burkhart, against H. O. Sapp, Administrator of Angeline Peoples, heard by *Judge C. M. Cooke* and a jury, at the May Term, 1905, of the Superior Court of FORSYTH.

This action was brought to determine the right, as between the parties, to a fund of $865, now in the hands of the defendant by agreement, as stakeholder. The controversy arose on the following facts: Angeline Peoples was the owner of a house standing on her lot immediately north of and twelve feet from a reservoir belonging to and used as a place for the storage of water by the city of Winston. On the 2nd day of November, 1904, the wall of the reservoir, which was 20 feet higher than the house, by reason of some negligent defect in its construction or its condition, gave way and either fell, or by the weight and force of the water was driven, against the house, crushing it and killing the said Angeline Peoples, who, with her husband, a son by a former marriage and a stepson, lived in it. The city paid the sum of $4,500 to the administrator of Angeline Peoples for negligently killing her and also paid to him the said sum of $865, the value of the property destroyed, the latter sum to be held subject to the determination by the court of the proper and rightful claimant thereto. The court submitted to the jury the following issue: "Did the intestate of the defendant survive the destruction of the property described in the pleadings?" which the jury answered in the negative.

The defendant's right to the fund was made to turn upon the survival by Angeline Peoples of the destruction of the property. The testimony, which was that of her neighbors, tended to show that within a very short time after they heard a roaring sound, they went out and discovered that the reservoir had burst, the water had spread over the ground and had rushed into some of the houses. The house of Angeline Peoples had then been crushed as if by the first impact of the wall and the water. They rescued Fred Burkhart,

son of Angeline Peoples, and Walter Peoples, her step-son, and Mr. Peoples, all in the order mentioned, who were more or less injured. They then searched for Mrs. Peoples and found her under the debris, consisting of timbers, brick and mortar, and seated in a chair. She was bleeding at the mouth and nose and apparently dead, "as they discovered no signs of life." The brick found on her seemed to have fallen from the chimney. It was about half an hour after they heard the crash before they found Mrs. Peoples. The house had two rooms, and Mr. and Mrs. Peoples and her son slept in the room at the north end of the house, that is the one farthest from the reservoir, and at the north end of that room.

At the request of the defendant the court gave the following instructions: "1. When the matter at issue is as to whether a person, shown or admitted to be living just before or a short time before the happening of a certain event, continued to live until after the event happened, the presumption is that the person did continue to live until after the happening of the event, and the burden is upon the party who asserts the contrary to show that the death occurred prior to or instantaneously with the happening of the event. 3. If the death of Mrs. Peoples did not occur until after the destruction of the property, though but a moment after, then Mrs. Peoples survived the destruction of the property. 4. The burden is on the plaintiff to show that the death of Mrs. Peoples occurred before or instantaneously with the injury to the real estate, or in other words that she did not survive the destruction of the property. 6. If the death of Mrs. Peoples did not occur until after the destruction of the property, though but a moment after, then Mrs. Peoples survived the destruction of the property and the jury will answer the issue 'yes.'" And the court refused to give the following: "2. There is no evidence to show that the death of Mrs. Peoples took place before the injury occurred to the real estate

and therefore the jury must answer the issue 'yes.' 5. There is no evidence to show that the death of Mrs. Peoples took place before or at the moment when the injury to the real estate occurred." The defendant excepted to the refusal to give instructions numbered 2 and 5.

The court then charged the jury as follows: "If the jury should find from the evidence that the falling of the house crushed the life out of Angeline Peoples, then she did not survive the destruction of the house, and they should answer the issue 'no,' but if they should find that she was wounded by the falling of the house and afterwards died from her wounds, or that she was caught in the ruins and afterwards died from suffocation, then she did survive the destruction of the house and the jury should answer the issue 'yes.' " The defendant excepted. Verdict and judgment for plaintiff. Defendant appealed.

*Watson, Buxton & Watson* and *E. A. Griffith* for the plaintiff.

*Lindsay Patterson, H. R. Starbuck* and *F. T. Baldwin* for the defendant.

WALKER, J., after stating the facts: The rule of the common law is that a personal right of action dies with the person, but great changes in this respect have been wrought by legislation and the decisions of the courts, and the maxim has thereby lost much of its vitality. As to pure torts, it still retains its ancient force and vigor, that is as to those torts committed to one's person, feelings or reputation, but it does not now apply to torts committed to the property, personal or real. As to the first kind of property, it was repealed by the act, 4 Edward III, chapter 7, and as to the second, by 3 and 4 William IV, chapter 42. These provisions have been substantially adopted by our Legislature and will be found in the several compilations of our statutes. Revised Stat-

utes, chapter 46, section 37; Revised Code, chapter 46, section 43; Code, sections 1490, 1491 and 1497; Broom's Legal Maxims (8 Am. Ed.), 904, *et seq; Howcott v. Warren,* 29 N. C., 20; *Rippey v. Miller,* 33 N. C., 247; *Butner v. Keelhn,* 51 N. C., 60; Schouler on Executors, sections 279 and 373. But for this radical change in the law, neither the plaintiff nor the defendant would be entitled to the fund in controversy. One of them must have it and which of the two is entitled to the favorable judgment of the court, under the law, is the question before us and is one not entirely free from difficulty. "A right to recover recompense for damages (to land) sustained is a chose in action which, if permitted to survive the person damaged, survives to his executor or administrator. The heir or devisee has no interest in or claim to it, and cannot, therefore, either originally prosecute a suit for it or revive one that has been instituted in the life time of the person injured." *Dobbs v. Gullidge,* 20 N. C., 197. But this presupposes of course that the cause of action accrued in the life time of the testator or intestate, or, in other words, that the injury was committed during that time. If it was committed after his death, the right of action would belong to the heir or devisee. We must therefore inquire in such a case when, in contemplation of law, the injury was done. Where there is a breach of an agreement or the invasion of a right, the law infers some damage. *Bond v. Hilton,* 47 N. C., 149; 1 Sedgwick on Damages (8 Ed.), section 98. The losses thereafter resulting from the injury, at least where they flow from it proximately and in continuous sequence, are considered in aggravation of damages. Hale on Damages, section 32; *Brown v. Manter,* 2 Foster (22 N. H.), 468. The accrual of the cause of action must therefore be reckoned from the time when the first injury was sustained. This has been expressly decided by this court. *Ridley v. Railroad,* 118 N. C., 996; *Parker v. Railroad,* 119 N. C., 685. "When an injury is permanent, it is what is spoken

of in the books as 'original,' that is as accruing wholly when the wrongful act was done, and is distinguished from an act which is to be regarded as continuing, that is an injury that could and should be terminated and is to be compensated for strictly with reference to the past and upon the theory that it would be terminated." *Bizer v. Railroad,* 70 Iowa, 147. The case is cited with approval, and the language above quoted adopted in *Ridley v. Railroad, supra.* An injury committed is then a permanent one, in the sense above explained, when it is done at once by the unlawful act or the negligent omission from which the loss results without any repetition of the act, there being only one act and one damage, though the latter may be composed of several items or consist, for example, in the destruction of several different pieces of property. The wrong produces one continuous train of consequences. The loss is all traceable back to the single origin and in that case the law awards damages once for all. *Ridley v. Railroad, supra; Beach v. Railroad,* 120 N. C., 498. "The right to recover prospective as well as existing damages in an action, depends usually upon the answer to the test question whether the whole injury results from the original tortious act or from the wrongful continuance of the state of facts produced thereby." *Ridley v. Railroad, supra,* citing *Troy v. Railroad,* 3 Foster (N. H.), 83. In the case of a nuisance or a continuing trespass, from the very nature of the act, the cause of action must be of itself a continuing one; but when there is a single wrongful act, which the law denominates the injury, the continuing damages flowing from the one wrong belong to the party originally injured and are recoverable in one suit; the cause of action and damages are an entirety. *Cook v. Redman,* 44 Mo. App., 397; *Moore v. Love,* 48 N. C., 215. When a cause of action once accrues there is a right, as of the time of the accrual, to all the direct and consequential damages which will ever ensue, that is, all damages not resulting from a continuing fault which

may be the foundation of a new action or of successive actions, and the law will in such a case take into consideration not only damage already suffered, but that which will naturally and probably be produced by the wrongful act, subject of course to another rule as to what prospective damages can be recovered in actions of tort. 1 Sutherland on Damages (3 Ed.), sec. 120; *Beach v. Railroad, supra.* It has been held that, where an attorney brought a suit improperly, the cause of action arose at the time the error was committed, and not at the time the damage was actually sustained, nor at the time it developed and became definite. *Wilson v. Plummer,* 4 Peters, 172; *Smith v. Fox,* 6 Hare, 385; *Howell v. Young,* 5 Barn. & Cres. (11 E. C. L.), 219. So in *Shackleford v. Staton,* 117 N. C., 73, this court held that a cause of action arising against a clerk of the Superior Court, under the statute, for failure to docket a judgment, was complete when the failure first occurred, but the duty to docket was a continuing one during his term, and suit should have been brought within three years after his term expired, and, not having been brought within that time, it was barred, though the actual damage was not suffered by the plaintiff until after the bar of the statute had become effectual. In *Hocutt v. Railroad,* 124 N. C., 219, it is suggested that the cause of action does not accrue until there has been an injury or an actual invasion of the right of the plaintiff and he is in a position to recover his damages. He must at least have the ability to do so, it is said, or otherwise the principle underlying the statute of limitations, and we may add the assessment of damages, would be subversive of common right. These cases may all be reconciled, perhaps, by keeping in mind the true legal definition of an "injury" and by properly heeding the difference between those cases in which permanent damages, past and prospective, may be assessed and those in which only damages already accrued are awarded, either to the date of the writ or to the time of the verdict. The

court in *Wilcox v. Plummer, supra,* draws the line of demar-
cation between a case where there has been an injury or vio-
lation of a legal right and one where there has been conse-
quential damages merely, and in that connection refers to
the case of *Gillon v. Boddington,* 1 Car. & P., 541 (11 E. C.
L., 463), which is a very instructive one and bears some re-
semblance, in its general features, or at least in the principles
involved, to *Ridley v. Railroad* and *Hocutt v. Railroad, supra.*
In the *Gillon case,* the plaintiff owned a remainder in fee in
a wharf expectant on an estate for life in his father. The
defendants in 1823 dug soil out of their dock near the founda-
tion of the wall of the wharf in such a way that, by the action
of the tide, the wall was undermined, and it fell in 1824.
The father died in 1823, after the digging of the soil. The
court held that the son had a right of action for undermining
the wall against the defendants, although they had done no
act, which contributed to its destruction, since the death of
his father, at which time the plaintiff came into possession of
the freehold of the wharf. It will be observed that in the
*Gillon case* there was a life estate and a remainder in the
property and an injury to the inheritance, but the ground of
decision was that the digging near the plaintiff's foundation,
which was the primary cause of the subsequent injury, was
in itself no violation of a right, and that by possibility the
act might have proved harmless, as it would have been, had
the wall never fallen, and this reason for the decision is the
basis of the distinction between that case and *Wilcox v. Plum-
mer,* as shown by the court in the latter case. When the right
of the party is once violated, even in ever so small a degree,
the injury, in the technical acceptation of that term, at once
springs into existence and the cause of action is complete.
The recovery in such a case will embrace all damages result-
ing from the wrongful act. The cause of action and the dam-
age are to be deemed inseparable. This principle, as we have
shown, does not apply to a case of a nuisance or trespass,

which torts are continuing in their nature, the nuisance of today being a substantive cause of action, and not the same with the nuisance of yesterday, and likewise in the case of a continuing trespass. *Wilcox v. Plummer, supra; Eller v. Railroad,* 140 N. C., 140. If the trespass consists in one single act of wrong and has not in it the element of continuance, the general rule we have stated will apply, for where there is the same reason, there must be the same law. The cases of *Moore v. Love,* 48 N. C., 215; *Shaw v. Etheridge, ibid.,* 300, and *Jones v. Kramer,* 133 N. C., 446, are distinguishable from our case. They belong to a class of their own, and were decided upon the ground that the damage was not of a permanent character, as is illustrated in the case last cited, where the nuisance was abatable. They are manifestly not like a case where the wrongful act is single and the *tortfeasor* has irrevocably done all that he can do, though the unlawful act has not fully spent its force, but as a self-acting agency, once put in motion, continues to cause damage. The wrong itself is an accomplished fact, which its author cannot recall or stop, though its consequences in the way of damage still go on. The case just put is like that we find in *Hughes v. Newsom,* 86 N. C., 424, where it was said that the wrong or default of the sheriff, when once committed, was absolute and complete, and gave an immediate right to sue for all damages resulting therefrom.

Applying these general principles to the facts of our case, we conclude that this is an action for "consequential damage." The negligent construction of the reservoir did not become a technical wrong, until by its natural operation it culminated in the fall of the wall, and the latter is the gravamen of the action, and the specific wrong which produced the damage, for the recovery of which the suit was brought. So long as the city, by its negligence, did no injury to any one else, it was not in a legal sense guilty of any wrong, the maxim of the law, so use your own as not to injure others, not having been

violated. The defective condition of the reservoir was a men-
ace to adjoining property, against which the owners might
perhaps have had preventive relief in equity, but no legal
right of another was at all infringed until by the process of
time, and the gradual operation of the primary cause, the
wall was undermined and fell, in consequence of what the city
had before that time done or failed to do. *Roberts v. Read,*
16 East, 215. This is what is called in law the "consequen-
tial damage," or, more correctly, the consequential injury
resulting from the faulty construction of the reservoir, and
that is the *causa litis*. *Hocutt v. Railroad, supra.* But just
as soon as the wall fell on the lot of Mrs. Peoples and struck
her house, the first injury, as said in *Ridley v. Railroad,* was
sustained and her cause of action immediately arose. *Roberts
v. Read, supra.* It was not necessary that all of the damage
should have been done at that particular instant of time, in
order to constitute the wrong, for which she might sue and
recover the full damages resulting therefrom. The very
moment the wall fell, and surely when it struck the end of
the house next to it, there was a wrong committed. It was
not then a wrong merely threatened, but one which had begun
to be executed. The city was not then legally within its
right, but had transcended it and was actually invading the
right of another to the peaceful enjoyment of her property,
and to the protection of it from injury. Its negligence had
ceased to be innocuous. It was a *tort feasor,* and at once
became liable for all ensuing damage of which the injurious
act was the efficient cause. If the injury developed in the
lifetime of the deceased, and the damage followed in unbroken
sequence as the direct and proximate result of it, so that "the
facts constituted a continuous succession of events, so linked
together as to make a natural whole" (*Railway v. Kellog,* 94
U. S., 475), without any intervening and independent act
creating new damage or such as was not directly caused by
the original wrong, the party to whom the first injury was

MAST *v.* SAPP.

done, and consequently the administrator in this case, is entitled to recover all the damage. The injury and the damage are one and indivisible. The distinction between a single act of injury and continuing acts is clearly shown in *Spilman v. Navigation Co.,* 74 N. C., 675. If the wrong started in the lifetime of the deceased, we do not see how it can be said to have occurred after her death. It cannot be divided into parts, for it is an integral whole and so regarded in law. Everything that proceeds from it must have relation to the time of its commencement. In *Powers v. Council Bluffs,* 45 Iowa, 652, it appeared that the city had cut a ditch along the side of the plaintiff's lots and caused his lands to be overflowed, and it was held that the cause of action was complete when the unlawful act was committed, and that all the damages accruing from the original wrong must be included in one action. The idea is that the force of the negligent act is fully spent in producing the damage, without any additional fault of the wrongdoer, as is the case where he continues a nuisance or trespass. The damage is susceptible of immediate estimation, no lapse of time being necessary to develop it. It can be assessed, as is the case of injury from a permanent structure, once for all. The court, in *Powers v. Council Bluffs,* recognizes the distinctions taken and the principles laid down by this court in *Jones v. Kramer, supra,* and *Moore v. Love, supra.* In our case, when the wall of the reservoir was undermined and fell, the wrong was complete, and there is no similitude to a continuing nuisance or trespass for which successive actions will lie. As said in *Fowle v. N. & N. Co.,* 112 Mass., at p. 388: "As a general rule, a new action cannot be brought unless there be a new unlawful act and fresh damage. There is no exception to this rule in the cases of nuisance, where damages after action brought are held not to be recoverable because every continuance of a nuisance is a new injury, and not merely a new damage. The case at bar is not to be treated strictly in this respect as an action for an

abatable nuisance." *D. C. I. & W. Co. v. Middaugh,* 13 Am.
St. Rep., 234. The case of *R. W. Co. v. Tillson,* 69 Me., 268,
is a very instructive case on this subject. It is there said that
a. second action cannot be maintained for damages resulting
from a single act, as it is complete and ended, and it is the
damage only which continues and is recoverable, because it
is traced back to the original act; while in the case of a nui-
sance it is the act which continues and is renewed day by day.
In the case at bar there was not and could not be any repeti-
tion of the original wrong after Mrs. Peoples' death, so as to
give her heir a cause of action, within the principle of the
case just cited, nor indeed was there in fact any damage after
her death. It had all occurred in her lifetime or at the very
instant she died. It follows from what we have said that the
issue was improperly framed. The question was not whether
Mrs. Peoples survived the destruction of the property, but
whether the injury was committed before or after her death,
under the principles which we have attempted to lay down for
the guidance of the court. In his complaint, the plaintiff
alleges that the destruction of the building and the death of
the intestate occurred at one and the same instant of time. If
this be true, no part of the injury, if we may use the expres-
sion, could have been inflicted after her death, and the title
of the plaintiff's ward did not accrue until his mother died.
Before that time he had a mere expectancy. Unless the
wrong was done after her death, or, what is the same thing in
effect, unless it occurred after the title vested in the plaintiff's
ward, the latter surely cannot be entitled to the fund in dis-
pute, as he was not in a legal sense injured by the wrong.
The plaintiff, in order to make good his claim, must, there-
fore, show that his ward had already come to his inheritance
when the wrong was committed and at its inception as it is
not divisible. Otherwise, the mother's personal representa-
tive is entitled to the fund to be administered according to
law—for either the one or the other must have it.

If the application of the foregoing principles will result in apparent hardship to the plaintiff's ward, we are reminded by Lord Campbell that "Hard cases must not make bad laws," and "we, as judges, cannot be wiser (or more liberal) than the law." It may be that the plaintiff can yet show a better case, but, if he fails, it cannot be attributed to any defect in the law, the rules of which are necessarily of general if not universal application, and not made for particular cases.

There was error in submitting the issue, as it was not sufficient to determine the rights of the parties. *Falkner v. Pilcher,* 137 N. C., 449. The case was not tried upon the right theory. Some of the instructions asked by the defendant to be given to the jury might have been correct and germane, if the issue had been properly framed.

New Trial.

CLARK, C. J., dissenting: If, as the complaint alleges, the destruction of the building and the death of the intestate occurred at one and the same instant of time, there was no moment of time during which the right to recover damages vested in her. Hence, no right to an action therefor could pass to her personal representative. If the same movement of matter and at the same instant swept her and her house out of· existence, it swept the title to the realty simultaneously into the heir. The destruction being therefore damage to the realty, which at that same instant of time became the property of the heir, the damage accrued to him. If so, the charge of the court was correct when he told the jury that "if they should find from the evidence that the falling of the house crushed the life out of Angeline Peoples, then she did not survive the destruction of the house, and they should answer the issue 'no.' "

When parent and child perish in the same shipwreck, nothing else appearing, the modern decisions all hold (ignoring former presumptions based upon strength, age, etc.,) that it

140——35

not appearing that the title vested for an instant in the child, the property goes to the heir and next of kin of the parent. If the damage to the realty and the death of the mother were simultaneous, by the same reasoning, the right to recover damages is not shown to have vested in her for an instant, and the realty at that same instant devolving upon the heir, the injury is done to his realty and the compensation should go to him.