## THE WILMINGTON WATER POWER COMPANY

*v.*

## ANNIE EVANS *et al.*

*Filed at Ottawa May 11, 1897.*

1. CORPORATIONS—*definition of a franchise.* A franchise is a special privilege emanating from the sovereign power, and owing its existence to a grant, or to prescription presupposing a grant.

2. SAME—*corporation ousted from its rights and privileges on quo warranto cannot afterward transfer them.* A corporation forever ousted, barred and excluded, on *quo warranto*, from the further exercise of the rights and privileges conferred by its charter, has no power to afterward sell or transfer them.

3. STATUTE OF FRAUDS—*license to overflow land must be in writing.* A license to perpetually overflow land creates an interest in the land, and is void, under the Statute of Frauds, unless in writing.

4. SAME—*acceptance of oral award does not create perpetual easement in overflowed land.* Acceptance by the owner of overflowed land of an oral award of damages, made on an oral submission to arbitration, does not create a perpetual easement in the overflowed land.

5. EMINENT DOMAIN—*property can be acquired by eminent domain only by contract or pursuant to statute.* A person or corporation entitled to acquire private property for public use must do so either by contract with the owner, or pursuant to the statute.

6. SAME—*oral license to use land sought to be condemned is revocable at any time.* An oral license to use or occupy land for any purpose for which it might be taken under power of eminent domain, confers no permanent right or interest in the land, and is revocable at the pleasure of the licensor.

7. EQUITY—*bill lies to abate dam causing overflow, if award is not paid.* One whose land is overflowed in consequence of the unauthorized erection of a dam, may, upon failure of the party erecting the same to pay the damages awarded by arbitration, file a bill in equity to require the payment of the award or abatement of the dam.

APPEAL from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is a bill originally filed on December 28, 1892, by the appellees, Annie Evans and Honor Judge. On February 14, 1893, said appellees filed an amended and supplemental bill, in which they alleged, that they were the owners in fee of one hundred and fifty-three acres of land,

situated upon the Kankakee river in Will county, which they inherited from their father, Patrick Judge; that Patrick Judge died on March 25, 1877, leaving five children, to-wit: said appellees and Michael Judge, Ellen O'Keefe and Hugh Judge; that the interests of the other heirs had been vested in the appellees, Annie Evans and Honor Judge; that said land was overflowed by reason of the building of a dam, called Dam Nó. 4, across the Kankakee river near Wilmington in Will county, in 1871; that by the building of said dam about thirty acres of said land were covered with water about ten feet deep, and divided into two parts by the formation of a new river bed, rendering a portion of the land an island, inaccessible except by means of a bridge or boat; that, in 1872, the Kankakee Company and Patrick Judge referred the question of damages to said land to three arbitrators, who in 1872 awarded to said Patrick Judge, as compensation for damages caused and to be caused by such overflow, the sum of $3400.00, to be paid before the end of the year 1874; that on March 5, 1873, said Kankakee Company paid said Judge upon the said award the sum of $400.00, and on August 11, 1874, paid him $100.00, but never paid any more upon said award. The bill made defendants thereto the Kankakee River Improvement Company, the Wilmington Water Power Company, the Electric Power Company of Wilmington, and James Anthony. The bill prayed for a decree, requiring the defendants to remove said dam, or the gates and locks connected therewith, so that the water of the Kankakee river might flow freely along its natural bed, so far as was necessary to permit said land to remain in its natural state as before the construction of the dam; the bill also prayed, that the defendants be enjoined from re-building or re-constructing the dam in such a way as to overflow the said lands, until they should pay to the complainants the said sum of $3400.00 assessed as damages to said land, less the $500.00 paid thereon together with interest.

The Kankakee River Improvement Company and the Wilmington Water Power Company filed their joint and several answers to the bill. Upon hearing had and proofs introduced, the court made a decree substantially in accordance with the prayer of the bill. The present appeal is from the decree so entered.

The material facts as gathered from the pleadings and the decree, there being no certificate of evidence in the case, are as follows: The legislature of Illinois on February 15, 1847, passed an act, entitled "An act to incorporate the Kankakee and Iroquois Navigation and Manufacturing Company," providing among other things that the objects of said company should be the improving of the navigation of the Kankakee and Iroquois rivers, and the creation of water power on said streams. The sixth section of said act, so far as is material here, is as follows: "The said company may also enter upon and take possession of and use all such land and materials as may be necessary for the construction of said improvements and the erection of said buildings and works. * * * And whenever it shall become necessary for said company to enter upon and take possession of any land necessary to the erection and maintenance of the slack water navigation on said rivers, and for making the improvements authorized by this act, said lands shall be paid for by said company at such prices as may be agreed upon by said company with the owner or owners thereof; and in case of disagreement, the price thereof shall be recovered in the manner provided by the laws of this State concerning the right of way; and whenever said company shall find it necessary to employ, in the construction of said improvements and works, any materials belonging to any other person or persons or company, the said corporation shall first pay to such person or persons or company owning the same, the fair and just value of all such material."

By act of February 25, 1859, the name of the company was changed to "The Kankakee Company." By act of February 16, 1865, the Kankakee Company was authorized to borrow money, issue bonds and mortgage its property. In 1870, the Kankakee Company issued $600,000.00 of bonds, and, on September 1, 1870, executed a trust deed to secure the same, conveying all its property including its franchises to certain trustees; and, on May 18, 1871, executed to the same trustees a second mortgage in trust upon other property owned by it. On November 18, 1876, a bill was filed to foreclose said mortgages and trust deeds, and a decree of sale was entered; and the said dam No. 4 and its franchises, rights of way, locks, dams and embankments, abutments, etc., with all the equipments and appurtenances thereto belonging, were sold under said decree to an Illinois corporation, called "The Kankakee River Improvement Company," to which deeds thereof were executed on March 19, 1880, and April 8, 1880. When the first mortgage was executed, the Kankakee Company was and continued to be insolvent.

The Kankakee River Improvement Company was organized on February 5, 1880, under the general Incorporation law of this State of July 1, 1872. Its object, as expressed in its articles of incorporation, was: "To improve the navigation and develop the water power of the Kankakee and Iroquois rivers *as successors by purchase of the corporate franchise of the Kankakee Company.*" The deed of April 8, 1880, conveying to the Kankakee River Improvement Company the corporate franchise and privileges of the Kankakee Company, was made subject to any unsettled legal claims for rights of way and land damages; and, when said deed was made, the Kankakee River Improvement Company had notice of the award aforesaid, and that it had not been paid.

On April 15, 1881, an information was filed in the circuit court of Will county against the Kankakee River Improvement Company by the Attorney General, requir-

ing it to show by what warrant it claimed to have, use and enjoy the liberties, privileges and franchises of the Kankakee Company, as will appear by reference to the case of *People ex rel.* v. *Kankakee River Improvement Co.* 103 Ill. 491. In said *quo warranto* proceeding, on June 14, 1883, a final judgment was entered, by which it was ordered that the said Kankakee River Improvement Company, *as purchaser of the franchises of said Kankakee Company,* formerly known as the Kankakee and Iroquois Navigation and Improvement Company, conferred by said act of February 15, 1847, and the other acts amendatory and supplementary thereto, "be absolutely and forever ousted, barred and excluded therefrom and from all rights and privileges dependent thereon of whatsoever nature," etc.

The appellant, the Wilmington Water Power Company, was organized November 25, 1885, under the general Incorporation law of this State; and its object was "to acquire and hold water power on the Kankakee river within the State of Illinois for general manufacturing purposes, and the necessary real estate therefor." The subscribers to its capital stock were stockholders of the Kankakee River Improvement Company, and some of them were officers of the said company. The Wilmington Water Power Company, had notice, that said award was not paid in full. On December 1, 1885, the Kankakee River Improvement Company conveyed to one William Claflin all its lands, dams, race-ways and locks at Wilmington, and all property and rights, privileges and franchises belonging to it, in trust for the benefit of its creditors. Thereafter, in 1885, said Claflin, as trustee, conveyed all of said property to the Wilmington Water Power Company. On the third day of November, 1893, the Kankakee River Improvement Company quit-claimed all of said property and privileges and franchises to the Wilmington Water Power Company. The dam No. 4 was completed November 20, 1871, and the water overflowed the top of it on December 2, 1871, making a pond extend-

ing back up the river about twelve miles, with an average width of about eight hundred feet. The dam was about four miles below the land of the appellees, and was about one thousand feet long and fifteen feet high.

Annie Evans was thirteen years old on June 25, 1876, and Honor Judge was eleven years old on August 17, 1876. Hugh Judge was appointed executor of the will of Patrick Judge on June 28, 1877, and the estate was closed and the executors discharged on June 11, 1885.

HAMLIN, HOLLAND & BOYDEN, for appellant:

Although an award does not conform to the statutory requirements it is good as a common law award, with all the force of a judgment at law or a decree in equity when accepted and approved by both parties, and is available as an instrument of both offense and defense, and bars all rights upon matters submitted to arbitration and determined by it. Morse on Arbitration and Award, 574, 576; *Eisenmeyer* v. *Sauter*, 77 Ill. 515; *Haywood* v. *Hammond*, 17 id. 477; *Gerrish* v. *Ayers*, 3 Scam. 246.

When a statute provides that upon deposit or payment the title to the property and the right of possession shall vest in the condemning party, and also gives the right to agree upon compensation, then the matter of damages may be settled by oral agreement, and the title will vest by virtue of the statute, the damages first being ascertained and deposited pursuant thereto. *Smith* v. *Goulding*, 6 Cush. 154; *Water Co.* v. *Filson*, 69 Me. 255; Lewis on Eminent Domain, sec. 298.

The omission to make due compensation for private property or rights appropriated by the authority of the legislature to the above use, can be taken advantage of by the owner only, and, if he once assents to the taking, cannot be afterwards availed of by himself or those claiming under him. *Haskell* v. *New Bedford*, 108 Mass. 208.

If the owner of property condemned for public use waives his right to pre-payment, after possession taken,

his remedy is exclusively at law, upon his claim for damages.   *McAulay* v. *Railroad Co.* 33 Vt. 311; *Railroad Co.* v. *Smith,* 125 Ind. 412; *Coe* v. *Railroad Co.* 10 Ohio St. 372.

A constitutional right may be waived like any other. *Baker* v. *Braman,* 6 Hill, 47; *Railroad Co.* v. *Hock,* 118 Ill. 587.

HILL, HAVEN & HILL, (WILLIAM MOONEY, of counsel,) for appellees:

A mere parol license or agreement to enter upon, use and enjoy the land of another is within the Statute of Frauds, and may be revoked by the land owner at will, even after the expenditure of large sums of money on the strength of such license or agreement.   *Stock Yards* v. *Ferry Co.* 112 Ill. 384; *Woodward* v. *Seeley,* 11 id. 157.

The right to flood the land of another is an interest in land, and a parol license or agreement giving such right is within the Statute of Frauds, and void.   *Tanner* v. *Volentine,* 75 Ill. 624; *Deyo* v. *Ferris,* 22 Ill. App. 154.

A mere oral consent or license to use or occupy land for any purpose for which it might be taken under compulsory powers does not confer any permanent right or interest in the land, but is revocable at the pleasure of the licensor.   Lewis on Eminent Domain, sec. 298.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The theory of the appellant is, that the arbitration in 1872 between the Kankakee Company and Patrick Judge resulted in an award good at common law; that, upon the acceptance of the award by both parties, the Kankakee Company acquired a vested right in the land of Patrick Judge amounting to a perpetual easement to overflow his land to the extent originally overflowed; and that the Kankakee River Improvement Company and the Wilmington Water Power Company, as successors of the Kankakee Company, were entitled to exercise the rights, privileges and franchises of the latter com-

pany.   The appellant makes the following statement in its answer: "The Kankakee Company, and its successors in title, have always considered, that the award of said board of arbitrators, accepted by the parties thereto and never objected to or appealed from, vested in said Kankakee Company a perpetual easement to overflow the land described in the bill of complaint to the extent originally overflowed by the building of said dam No. 4, and gave to said Judge a claim for compensation equal to said award against said Kankakee Company."

If it be conceded, that a perpetual easement to overflow the land of appellees was thus vested in said Kankakee Company, the right to exercise the rights, privileges and franchises of the Kankakee Company, including the right to such easement, did not pass to the appellant, the Wilmington Water Power Company.   The Kankakee River Improvement Company was organized on February 5, 1880, under the general Incorporation law of this State; and the only object of its organization was "to improve the navigation and develop the water power of the Kankakee and Iroquois rivers, as successors by purchase of the corporate franchise of the Kankakee Company."   The deed, made to the Kankakee River Improvement Company on April 8, 1880, by the trustees, under the decree of foreclosure, conveyed the corporate franchises and privileges with the rights of way of the old Kankakee Company.   But, by the judgment entered on June 14, 1883, in the *quo warranto* proceeding, the Kankakee River Improvement Company, as purchaser of the franchises of said Kankakee Company, was absolutely and forever ousted, barred and excluded from all the rights and privileges conferred by the act of February 15, 1847, and was thereby excluded from any further exercise of such franchises and rights and privileges; and it therefore had no power to sell or transfer them in 1885 to appellant, the Wilmington Water Power Company.   It could not transfer what it did not legally own

or possess. A franchise is generally understood to be a special privilege emanating from the sovereign power of the State, owing its existence to a grant, or to prescription presupposing a grant. (*Board of Trade* v. *People*, 91 Ill. 80). The appellant was organized in November, 1885, long after the judgment of ouster had been entered. Its officers and stockholders were in large part the same as those of the Kankakee River Improvement Company, and it was affected with knowledge of the fact, that the latter company had been ousted from all the rights and privileges and franchises of the old Kankakee Company. The appellant stands in precisely the same position as though the Kankakee Company had never existed; whatever rights it had as against appellees when the bill in this case was filed must depend upon its own articles of incorporation, and what it has done under the same. The object of its incorporation was to "acquire and hold water power on the Kankakee river within the State of Illinois," etc. In the exercise of the power thus conferred upon it by its charter, it has made no attempt to acquire the right to overflow the land of the appellees. It has not acquired such right by condemnation, or by agreement with the appellees, or otherwise; and, as it did not acquire the same as successor to the Kankakee River Improvement Company, we are unable to see, that it has any authority to continue the flooding of the land of the appellees.

But if it be true, that the interest, acquired by the Kankakee Company through the award and its acceptance by Patrick Judge and the company, passed to appellant, as the successor of the Kankakee Company, yet it does not follow, that such award and its acceptance vested an easement in the Kankakee Company to overflow the land of the appellees. Neither the agreement to submit the question of damages to arbitrators, nor the award itself of the arbitrators, was in writing. The award was an oral one. It may be true, that, as a general

rule, a parol submission to arbitrators is good at common law. (*Smith* v. *Douglass*, 16 Ill. 34; *Phelps* v. *Dolan*, 75 id. 90). It is claimed for the award by the appellant, that it vested in the Kankakee Company the right to overflow the land of Patrick Judge, the ancestor of the appellees. Such right to overflow is an interest in land. It is well settled, that a parol license or agreement giving such right is within the Statute of Frauds, and void. Such a license is revocable at any time. (*Tanner* v. *Volentine*, 75 Ill. 624). In *Woodward* v. *Seely*, 11 Ill. 157, this court held, that a license perpetually to overflow the land of the party granting such license would create an interest in the land, and therefore that the license could not be granted by parol. A license coupled with an interest in land must be in writing. The doctrine of the *Woodward case* was subsequently endorsed and adhered to in the case of *St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.* 112 Ill. 384.

It may be said, that the award here is not a parol license to overflow the land, and does not convey or purport to convey any interest in land. But even if it be regarded strictly as an award and not as a parol license, it is pleaded as a bar to the present suit, upon the ground that, by its acceptance by both parties, the Kankakee Company acquired a vested right in the land of Judge amounting to a perpetual easement to overflow his land. A submission and award should be in writing where a writing is required to pass the title to the thing in contest. (*Smith* v. *Douglass*, 16 Ill. 34; 2 Am. & Eng. Ency. of Law,—2d ed.—p. 543). An oral submission to arbitration and an oral award are valid, except where an instrument in writing is required to pass the title to the thing in dispute. A perpetual easement to overflow land being an interest in land which requires an instrument in writing to pass the title to it, the acceptance of an oral award cannot be said to vest such an interest. "It may be laid down as a general principle, that a person or corporation, entitled to acquire property for public use, must do

so either by contract with the owner or pursuant to the statute conferring compulsory powers. If the mode of acquiring property by contract is attempted, the same rules in general apply as in cases of private individuals acquiring property for private use. The Statute of Frauds applies to all parties and to transfers for all purposes. An interest in land cannot be transferred by a mere oral agreement. It can only be done pursuant to such formalities as are required by the Statute of Frauds. A mere oral consent or license, therefore, to use or occupy land for any purpose, for which it might be taken under compulsory powers, does not confer any permanent right or interest in the land, but is revocable at any time at the pleasure of the licensor." (Lewis on Eminent Domain, sec. 298).

Counsel for appellant say, that the charter of the Kankakee Company, requiring the parties to agree if possible before instituting court proceedings to determine the question of compensation, but not requiring such agreement to be evidenced by writing, takes all the cases arising under this special charter from under the Statute of Frauds, and gives the same force and efficacy to an oral agreement made pursuant to this private charter, as would be given to a written agreement. We cannot agree with this view. The sixth section of the act of 1847, provided, that, whenever it should become necessary for the company to enter upon and take possession of any land necessary to the erection and maintenance of the slack water navigation in said rivers, and for making the improvements authorized by said act, said land should be "paid for by said company at such prices as might be agreed upon by said company with the owner or owners thereof." Here, the company did not pay the price which was agreed upon. The consideration for the right to overflow the land of the appellees was the payment of $3400.00; and the right of overflow was, by the very terms of the agreement, dependent upon the payment of the

money. The case of *Rockland Water Co.* v. *Tillson*, 69 Me. 255, was a case, where a receipt in full for damages had been given by the land owner, and there the court held, that the Statute of Frauds under such circumstances would not avail him. Here, there was no receipt in full for damages.

As the award was void, under the view advanced in the answer that the Kankakee Company thereby acquired a vested right to a perpetual easement to overflow the land, it is unnecessary to consider the question, whether an action at law upon it was barred by the Statute of Limitations or not. Nor do we consider, that appellant has made out a title to the easement by adverse possession of twenty years, or that the appellees, in view of their minority and want of notice in regard to repairing said dam, were guilty of *laches.*

A question is made as to the jurisdiction of a court of equity in a case like the present. A bill in equity will lie to abate a mill-dam, unless the damages occasioned by the flowage are paid. (Lewis on Eminent Domain, sec. 619.) In *Smith* v. *Olmstead*, 5 Blackf. 36, a bill in chancery was filed to have a dam abated, which had been built across a certain creek and caused the complainant's land to be overflowed; and it was there held, that, if a mill-dam be erected without authority, a party, whose land is overflowed in consequence of the dam, may file a bill in chancery to prevent a continuance of the injury, where his right to complain has been established at law. In the case at bar, the right to complain has not been established at law, but the amount of the damages caused by the overflow has been fixed at a certain amount by arbitration. The fixing of the damages by arbitration and the award are as conclusive as to the amount of such damages as though they had been established in a proceeding at law. The decree in this case provides, that the injunction shall be dissolved provided the appellant shall pay the unpaid portion of the damages fixed by the

award with interest thereon. In *Ackerman* v. *Horicon·Iron Manf. Co.* 16 Wis. 151, it was held, that, where the amount of compensation to be paid to the owner of lands, flowed by a mill-dam, by reason of such flowage and for the right to flow the same, has been determined pursuant to the charter or law authorizing it to be erected and maintained, and the owner of such dam neglects to pay it, a court of equity will abate the dam at the suit of the land owner, if the owner of the dam will not pay the award. It was also there held, that the remedy of the land owner at law upon the award or assessment where it remains unpaid, or in trespass for damages, is inadequate, and he can only obtain full relief in a court of equity. In the same case the Supreme Court of Wisconsin said: "The arbitrators chosen for that purpose awarded him (the land owner) the sum of $884.14, which amount   *   *   * the company has not paid nor offered to pay, and therefore he asks that the dam be abated. We are really at a loss to know, upon what principle of law or morals the company claims the right to overflow land not belonging to it, without paying the damages resulting from such flowage, according to its charter.   *   *   * The claim that is really made here, in view of the allegations of this complaint, that the company can keep up its dam and overflow land not belonging to it, without paying such damages therefor as may be awarded by arbitrators or juries, is one not to be discussed in a government of law and constitutions. The company may maintain its dam upon condition that it pays parties where lands are overflowed, such damages as may be awarded. In other words, it must make compensation according to its charter or take down its dam. A citizen is not to be told when he comes into a court of equity asking relief from a permanent injury or total destruction of the use of his property, that he should bring suit on the award, or issue execution and obtain compensation for his damages if he is able. It is the duty of the company to pay the dam-

ages when they are ascertained and determined.   \*   \*   \*
And if it does not make this compensation, it can claim
no immunity from such relief as a court of equity may
award." (Angell on Waters, sec. 445).

The decree of the circuit court is affirmed.

*Decree affirmed.*