## Samuel E. Prather et al., Appellees, v. City of Springfield, Appellant.

1. Nuisance, § 44*—*when unnecessary that declaration aver that injuries to property are permanent.* In an action to recover damages for injury to crops and the loss of use of land caused by the illegal construction of a dam in a river, it is unnecessary that the declaration aver that the injury is permanent where the allegations show such to be the fact.

2. Damages, § 167*—*when proof of all elements of damage alleged is unnecessary.* A cause of action cannot be defeated because all the elements of damage alleged are not proven.

3. Nuisance, § 61*—*when dam in river is.* A dam which is constructed in a river without authority of law is a nuisance.

4. Nuisance, § 55*—*what are remedies of upper riparian owners for flooding of land due to construction of dam.* Where a dam is constructed in a river by a city without authority of law and is consequently a nuisance, upper riparian owners whose property is injured by flooding may treat the injuries occasioned thereby as permanent or temporary at their election.

5. Statutes, § 274*—*when judicial notice not taken of private or local acts.* The court will not take judicial notice of private or local acts, but they must be pleaded.

6. Eminent domain, § 9*—*how statutes conferring powers of condemnation construed.* Laws conferring powers of condemnation are strictly construed.

7. Municipal corporations, § 799*—*when city has no power to erect dams and obstruct natural water courses.* Under the provisions of the Cities and Villages Act, relative to the acquisition and condemnation of necessary land for the purpose of acquiring or establishing waterworks beyond the territorial limits of a city (J. & A. ¶ 1501) and section 3 of the Act authorizing cities, corporated towns and villages to construct and maintain waterworks (J. & A. ¶ 2014), a city has no power to erect dams and obstruct natural water courses, as laws conferring powers of condemnation must be strictly construed.

8. Municipal corporations, § 799*—*when city may not take or injure private property without making just compensation.* Even though in the provisions of the Cities and Villages Act, providing for the acquisition and condemnation by a city for the purpose of supplying or establishing waterworks beyond its territorial limits

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(J. & A. ¶ 1501), and section 3 of the Act conferring on cities the authority to construct dams across natural water courses and condemn property therefor (J. & A. ¶ 2014), they do not have authority to take or injure private property without making just compensation therefor by condemnation or purchase.

9. RIPARIAN OWNERS, § 18*—*when dam is nuisance and may be abated.* As to a landowner whose property has been damaged or destroyed by the erection of a dam and has not been paid compensation for the damages caused by the flowage, such dam is a nuisance and may be abated.

10. NUISANCE, § 44*—*when count in action to recover for injuries to crops is broad enough to cover damages for temporary injuries.* A count in an action by a riparian owner to recover damages for injury to crops and the loss of use of land caused by the illegal construction of a dam in a river, *held* broad enough to include damages for temporary injuries.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 13, 1916.

FRANK L. HATCH, ROY M. SEELEY and STEVENS & HERNDON, for appellant.

W. E. SAMPSON and CLAYTON J. BARBER, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is an appeal from a judgment entered on a verdict awarding $3,925 recovered by appellees against appellant for damages to crops and the loss of the use of certain lands caused by a dam constructed by appellant in the Sangamon River. The first count avers that plaintiffs were the owners of real estate comprising approximately 1,056 acres lying in one contiguous body to the north of and bounded on the south by a · certain natural stream or water course known as the Sangamon River; that said lands are so situated as to allow and permit natural drainage from the surface

thereof into the said river and to allow and permit a natural underdrainage thereto by percolation through the soil into said river; but said lands are also so situated as to be subject to overflow from great quantities of water in any manner caused to flow, back up and stand in said river immediately adjacent thereto; that the City of Springfield wrongfully and unlawfully constructed a certain large concrete dam 13 feet high in the bed of and entirely across the natural channel of the river about two miles to the west of and below the lands of the plaintiffs, and has wrongfully and unlawfully continued the same from thence hitherto as a part of a system of waterworks for said city and its inhabitants; and thereby defendant has wrongfully and unlawfully obstructed and stopped the flow of and heightened the stage of the water in the river to a height of 12 feet above its natural and normal stage, so that by reason thereof at various times during the past five years large quantities of water overflowed said premises and thereby were caused to and did enter and spread over and across said lands, and by reason thereof large quantities of water were thereby caused to stand upon said premises during a great portion of each year of said five years, and during the said period the surface and underground drainage aforesaid have thereby been greatly hindered, obstructed and prevented and said lands thereby greatly damaged and rendered less valuable and less fit for cultivation and farming purposes during the period aforesaid; and plaintiffs have been thereby delayed, hindered and prevented in and about the cultivation of the premises aforesaid during each of said five years, and the crops growing thereon have been greatly injured, damaged and destroyed, and by reason of the premises aforesaid the plaintiffs have been greatly injured and damaged thereby.

The second count makes the charge of negligence in failing to provide the dam with sufficient sluice gates

to regulate and control the volume of waters impounded which would have permitted them to flow without damage to the plaintiffs.

The third count avers that there were two sluice gates in the dam but that defendant negligently failed to operate the same at such periods as were necessary to prevent the impounded water from causing injury to the plaintiffs.

There was no proof of damages on the theory of a permanent injury to the lands, and the instructions given to the jury on behalf of the plaintiffs permitted the assessment of damages for temporary injuries. The second instruction told the jury, in substance, that it was sufficient to entitle plaintiffs to a verdict if they have established their case by the greater weight of the evidence as alleged in either one or more of said counts.

It is contended the court erred in the giving of this instruction for the reason that the first count does not state a cause of action for damages for temporary injuries because the facts alleged therein show that the injury to the land is of a permanent character, and as there was no proof of any damages on the ground of a permanent injury thereto the instruction is erroneous. The determination of this question will also decide all the other errors assigned in this case both as to the evidence and the other instructions.

The evidence tended to show that the construction of the dam caused the water in the river, at time of freshets and heavy rains, to back up and overflow these lands to such an extent during the five years mentioned that the crops on portions thereof were injured and at times a small part thereof was rendered unfit for cultivation. The dam was erected in 1908 and was built about 1,300 feet south of the site of an old dam which had been erected by the city at some time not definitely shown by the evidence, but about or prior to the year 1886. It must be conceded that a dam of the

character described is a permanent structure, and it has been held in other cases that allegations of facts similar to those alleged in the first count show a permanent injury to the land, and damages for temporary injuries cannot be recovered thereunder. *Wheeler v. Sanitary Dist. of Chicago,* 270 Ill. 461; *Shaw v. Sanitary Dist. of Chicago,* 267 Ill. 216; *Vette v. Sanitary Dist. of Chicago,* 260 Ill. 432. The first count in the declaration in the case at bar does not aver that the injuries are permanent, but such averment is not necessary if the allegations show such to be the fact. This count does aver, however, injuries to the crops growing on said land in addition to the injury to the land itself. A cause of action is not defeated because all of the elements of damage alleged are not proven. This count is broad enough to cover damages for injury to the crops irrespective of any permanent damages to the land, provided, that taking the count as a whole it need not be construed as applying only to permanent injuries. The test for the solution of this question is whether the dam was a lawful or unlawful structure. In the *Sanitary* cases, *supra,* the injuries were caused under authority of law. The declaration in this case, including the first count, charges that the dam was wrongfully and unlawfully constructed. If this dam was constructed without authority of law it was a nuisance, and the plaintiffs had a right to treat the injuries occasioned thereby as permanent or temporary at their election. In the case of *Strange v. Cleveland, C., C. & St. L. Ry. Co.,* 245 Ill. 246, the court cited the rule as laid down by Sutherland on Damages (sec. 1046) as follows: "The apparent discrepancy in the American cases on this subject may, perhaps, be reduced by supposing that where the nuisance consists of a structure of a permanent nature and intended by the defendant to be so, or of a use or invasion of the plaintiff's property or a deprivation of some benefit

appurtenant to it for an indefinitely long period in the future, the injured party has an option to complain of it as a permanent injury and recover damages for the whole time, estimating its duration according to the defendant's purpose in creating or continuing it, or to treat it as a temporary wrong, to be compensated for while it continues,—that is, until the act complained of becomes rightful by grant, condemnation of property or ceases by abatement.''

By an act of the Legislature entitled, ''An act to incorporate the Springfield Water Works Co.,'' approved February 21, 1861, a body of water commissioners was created with ''power to build a dam across the Sangamon River at such point as they shall deem most convenient and desirable,'' with the right to condemn property therefor. (Private Laws 1861, p. 285.) This act was amended in 1867 (Private Laws 1867, vol. 3, p. 679), and gave additional power to the commissioners to make all necessary excavations and to erect all necessary buildings at said river and to condemn all land necessary for such purpose. It is claimed that in the case of *Board Water Com'rs City of Springfield v. People*, 137 Ill. 660, that the provisions of these acts were held to be portions of the special charter of the City of Springfield under which the city operated until it adopted the Cities and Villages Act in 1882. And it is insisted that the powers granted to the waterworks company in 1861 and 1867 were not inconsistent with the Cities and Villages Act and were accordingly retained among the powers of the city after its adoption of that act, and that the construction of the dam in 1908 was therefor authorized by the charter powers of the city and was not the creation of an abatable nuisance. One answer to this proposition is that the Acts of 1861 and 1867 were private acts containing no provisions that they should be deemed public acts, and they have neither been alleged nor proven. The court therefore cannot take judicial no-

tice thereof nor give them consideration. *Illinois Cent. R. Co. v. Ashline*, 171 Ill. 313; *Gormley v. Day*, 114 Ill. 185; *Rockford, R. I. & St. L. R. Co. v. Lynch*, 67 Ill. 149; *Nimmo v. Jackman*, 21 Ill. App. 607; *Lavalle v. People*, 6 Ill. App. 157; *People v. Wilson*, 3 Ill. App. 368.

It is also insisted that the city had a right to build this dam by virtue of section 2, art. X, ch. 24, Hurd's Rev. St. 1913 (Cities and Villages Act, J. & A. ¶ 1501), and section 3 of the act entitled, "An act authorizing cities, incorporated towns and villages to construct and maintain waterworks," in force April 15, 1873. Hurd's Rev. St. 1913, p. 337 (J. & A. ¶ 2014). The first act provided that a city shall have the power for the purpose of supplying or establishing waterworks to go beyond its territorial limits and take, hold and acquire property by purchase or otherwise and condemn all necessary lands or property therefor in the manner provided for the taking or injuring private property for public uses. The latter act is substantially the same, and provides that cities may acquire and hold real estate and other property and rights necessary for the location, erection, construction and maintenance of waterworks with the power of condemnation. Neither one of these acts directly gives cities the power to erect dams and obstruct natural water courses unless it can be said that such power is implied from the language used, or as a necessary incident to the construction of a system of waterworks. Laws conferring powers of condemnation are strictly construed. *Gillette v. Aurora Rys. Co.*, 228 Ill. 261. But conceding that these acts, or either of them do confer on cities authority to construct dams across natural water courses and to condemn property therefor, they do not grant any authority or power to take or injure private property without making just compensation therefor by condemnation or purchase. As to a landowner whose property has been damaged or destroyed by

the erection of a dam and has not been paid compensation for the damages caused by the flowage, that dam is a nuisance and may be abated. In the case of *Wilmington Water Power Co. v. Evans,* 166 Ill. 548, it was said: "It has not acquired such right by condemnation, or by agreement with the appellees, or otherwise; and, as it did not acquire the same as successor to the Kankakee River Improvement Company, we are unable to see that it has any authority to continue the flooding of the land of the appellees." The opinion in this case cites with approval the case of *Ackerman v. Horicon Iron Mfg. Co.,* 16 Wis. *151 (156), in which it is held: "The claim that is really made here, in view of the allegations of this complaint, that the company can keep up its dam and overflow lands not belonging to it, without paying such damages therefor as may be awarded by arbitrators or juries, is one not to be discussed in a government of law and constitutions. The company may maintain its dam upon condition that it pays parties, where lands are overflowed, such damages as may be awarded. In other words, it must make compensation according to its charter, or take down its dam."

In so far as the plaintiffs are concerned, this dam is an unlawful structure and a nuisance, and they are therefore entitled to elect to sue for damages for either temporary or permanent injuries. The second and third counts are drawn on the theory of a recovery for damages resulting from temporary injuries, and the first count is broad enough to include damages for temporary injuries, consequently the court did not err in the giving of the instructions complained of nor in admitting evidence of damages for temporary injuries. There being no error in the record, the judgment is affirmed.

*Affirmed.*