VIVIAN HALL RAY, Plaintiff v. LEWIS HAULING AND EXCAVATING, INC. AND ALLEN EDWARD PETTY, Defendants

No. COA00-1009

(Filed 17 July 2001)

**Immunity— emergency management workers—private contractor**

The trial court properly denied summary judgment for defendants in a negligence action involving a dump truck assisting in hurricane clean-up efforts where defendants contended that they were entitled to governmental immunity under N.C.G.S. § 166A-14 as emergency management workers, but there was a genuine issue of fact as to the relationship between the defendants and the State of North Carolina, any political subdivision thereof, and the Army Corps of Engineers. There were also genuine issues of fact as to the claim of immunity under N.C.G.S. § 166A-15 in that defendants did not present evidence to suggest that they were sheltering, protecting, safeguarding, or aiding persons, as that statute requires.

Appeal by defendants from order entered 1 May 2000 by Judge Stafford G. Bullock in Wake County Superior Court. Heard in the Court of Appeals 14 May 2001.

*David R. Cockman for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, LLP, by Edward C. LeCarpentier, III, for defendant-appellants.*

TYSON, Judge.

Lewis Hauling and Excavating, Inc. ("Lewis Hauling") and Alan Edward Petty ("Petty") (collectively "defendants") appeal the trial court's denial of their motion for summary judgment. We affirm the trial court's order.

## A. Facts

On 15 September 1996, defendant Petty was driving a 1996 Mack dump truck owned by his employer defendant Lewis Hauling. Vivian Hall Ray ("plaintiff") was also driving her car when she and Petty collided as Petty was making a left hand turn. According to Petty, he had unloaded his dump truck and was en route to get another load when the accident occurred. Plaintiff and Petty disagree about who is at fault.

At the time of the accident, Lewis Hauling, a Florida Corporation, was under contract with Siboney Corporation of West Palm Beach, Florida to provide its dump trucks and employee operators to assist in clean-up efforts in the aftermath of Hurricane Fran.

Hurricane Fran passed through Raleigh on 4 and 5 September 1996. On 5 September 1996, the Governor of the State of North Carolina issued a Proclamation of State of Emergency pursuant to G.S. § 14-288.15 and G.S. § 166A-6.

Plaintiff filed her complaint on or about 14 April 1997 alleging that defendant, Petty, was negligent and that plaintiff suffered resulting injuries. On or about 14 May 1997, defendants answered. Defendants denied negligence and asserted plaintiff's contributory negligence as a defense. After discovery, defendants moved for summary judgment on 22 October 1999. On or about 1 May 2000, defendants' motion was denied. Defendants appeal.

## B. Issue

The only issue on appeal is whether the trial court erred in not granting summary judgment in favor of defendants.

## C. Defendants' Contentions

Defendants argue that the trial court erred as a matter of law in denying defendants' motion for summary judgment regarding plaintiff's claim for relief alleging negligence. Defendants contend that

they are statutorily entitled to governmental immunity pursuant to
G.S. 166A-14 and G.S. 166A-15. We are unable to decide as a matter of
law whether defendants are entitled to statutory immunity. We hold
defendants, as movants for summary judgement, have failed to prof-
fer sufficient evidence to carry their burden of proving that there is
no genuine issue of material fact.

Although not raised by defendants as an issue, we note initially
that this appeal is from an interlocutory order which is generally not
appealable. *Tise v. Yates Const. Co., Inc.*, 122 N.C. App. 582, 584, 471
S.E.2d 102, 105 (1996), *affirmed as modified and remanded*, 345
N.C. 456, 480 S.E.2d 677 (1997) (citing *Veazey v. Durham*, 231 N.C.
357, 362, 57 S.E.2d 377, 381 (1950)). However, interlocutory orders
have been held to be properly appealable in cases where defendant
alleges governmental immunity. *Id.* A defense of governmental immu-
nity affords its possessor the privilege of not having to answer a civil
claim. *See Thompson v. Town of Dallas*, 142 N.C. App. 651, 543 S.E.2d
901 (2001); *Corum v. University of North Carolina*, 97 N.C. App. 527,
389 S.E.2d 596 (1990), *affirmed in part, reversed in part, and
remanded*, 330 N.C. 558, 418 S.E.2d 664 (1992). Defendants' appeal is
properly before us.

Defendants claim the trial court erred in not granting to them the
statutory governmental immunity afforded under the North Carolina
Emergency Management Act ("EMA") as a defense against plaintiff's
claim of negligence. *See* N.C. Gen. Stat. Article 1 of Chapter 166A.
Defendants argue that they were engaged in "recovery" efforts
following Hurricane Fran which were covered by the immunity pro-
visions of the EMA. Defendants claim that defendant, Petty, was an
"emergency management worker" ("EMW") performing "emergency
management services" on behalf of the Army Corps of Engineer
("Army Corps"). "Emergency management worker" is defined in G.S.
§ 166A-14(d). The phrase "emergency management services" is used
in G.S. § 166A-14(e), but it is not defined. "Emergency Management"
is defined as "[t]hose measures taken by the populace and govern-
ments at federal, State, and local levels to minimize the adverse effect
of any type of disaster, which include the never-ending preparedness
cycle of prevention, mitigation, warning, movement, shelter, emer-
gency assistance and recovery." N.C. Gen. Stat. § 166A-4(1) (1995).
EMW's are accorded qualified immunity while performing the gov-
ernmental functions as set out in the EMA. N.C. Gen. Stat. § 166A-14
(1995).

**RAY v. LEWIS HAULING & EXCAVATING, INC.**

[145 N.C. App. 94 (2001)]

### D.  Summary Judgment

A motion for summary judgment should not be granted if there are genuine issues of material fact. Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1967). "Such evidence must be viewed in the light most favorable to the non-moving party with all reasonable inferences also drawn in favor of the non-movant." *Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 448-49, 481 S.E.2d 349, 353 (1997) (citing *Whitley v. Cubberly*, 24 N.C. App. 204, 206-07, 210 S.E.2d 289, 291 (1974)).

" 'Irrespective of who has the burden of proof at trial . . ., upon a motion for summary judgment the burden is upon the party moving therefor to establish that there is no genuine issue of fact . . . and that he is entitled to judgment as a matter of law.' " *Whitley* at 206, 210 S.E.2d at 291 (quoting *First Federal Savings & Loan Assoc. v. Branch Banking & Trust Co.*, 282 N.C. 44, 51, 191 S.E.2d 683, 688 (1972)). "The burden does not shift to the non-moving party unless the movant proffers sufficient evidence to " 'negative[ ] [the non-movant's] claim . . . in its entirety.' " *Id.*

Our Supreme Court has maintained that "on a motion for summary judgment the burden of proving that there is no genuine issue as to any material fact is on the movant, and if he fails to carry that burden, summary judgment is not proper, whether or not the nonmoving party responds." *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 27, 423 S.E.2d 444, 457 (citing *Steel Creek Dev. Corp. v. James*, 300 N.C. 631, 637, 268 S.E.2d 205, 209 (1980)). We analyze defendants' contentions in light of the evidence presented to the trial judge who denied summary judgment.

### E.  N.C. Gen. Stat. § 166A-14

Defendants contend that they are entitled to immunity afforded "emergency management workers" under G.S. § 166A-14. In defendants' brief they claim that defendant Petty was engaged in "debris removal" which constituted emergency management services "pursuant to a request of the Governor of North Carolina for Federal assistance." More particularly defendants contend that Lewis Hauling was a subcontractor of the Army Corps' emergency management

operations in the Raleigh, North Carolina area following Hurricane Fran.

G.S. § 166A-14(a) declares that "[a]ll functions hereunder and all other activities relating to emergency management are hereby declared to be governmental functions." The section then goes on to provide qualified immunity to certain entities and individuals named in the Article.

> Neither the State nor any political subdivision thereof, nor, except in cases of willful misconduct, gross negligence or bad faith, any emergency management worker complying with or reasonably attempting to comply with this Article . . . shall be liable for the death of or injury to persons, or for damage to property as a result of any such activity.

N.C. Gen. Stat. § 166A-14(a) (emphasis added).

G.S. § 166A-14(d) defines an emergency management worker as:

> any full or part-time paid, volunteer or auxiliary employee of this State or other states, territories, possessions or the District of Columbia, of the federal government or any neighboring country or of any political subdivision thereof or of any agency or organization performing emergency management services at any place in this State government or any political subdivision thereof or any agency or organization performing emergency management services at any place in this State, subject to the order or control of or pursuant to a request of the State government or any political subdivision thereof.

N.C. Gen. Stat. § 166A-14(d) (emphasis added).

Defendants argue that defendant Petty falls squarely under the definition of an EMW. In Petty's affidavit, he claims that on the day of the accident he was en route after having dumped a load of debris and was heading back to the neighborhood where he was assisting a crew with debris removal left over from Hurricane Fran. Although 10 days had elapsed since Hurricane Fran passed through Raleigh, defendants argue that since (1) there was a state of emergency, (2) they had subcontracted with the Siboney Corporation which was allegedly assisting the Army Corps, and (3) they were hauling debris to and from the dump, the immunity provisions of the EMA applied to them. Defendants offer no evidence, however, that they were working "subject to the order or control of or pursuant to a request of the State

Government or any political subdivision thereof," which is part of the definition of an EMW. *See* N.C. Gen. Stat. § 166A-14(d). Defendants' only evidence in the record which mentions their affiliation with the recovery efforts is contained in two affidavits, one from each of the two defendants.

Roger V. Lewis' (President and majority shareholder of corporate defendant) affidavit states that "my company was under contract with Siboney Corporation of West Palm Beach, Florida, to provide our company's dump trucks and our employee operators to assist the United States Army Corp of Engineers with emergency management operations . . . ." Lewis further explains that the Army Corps provided him with instructions through a contact person, who would later provide daily instructions to his crew every morning located somewhere in Raleigh.

Defendant Petty, in his affidavit, also claims that he "would receive instructions for that day's work from a representative" of the Army Corps, and that on 15 September 1996, he "received . . . instructions for the day from a representative . . ." of the Army Corps. No evidence exists in the record regarding the name of the "contact" or "representative" from the Army Corps.

The record also contains an affidavit prepared and filed in a non-related case approximately nine months prior to the signing of defendants' affidavits. In that affidavit the Secretary of the North Carolina Department of Crime Control and Public Safety, Richard H. Moore ("Secretary Moore"), never mentions the Army Corps, Siboney Corporation, or defendants, when discussing the North Carolina Department of Transportation's ("DOT") role in Hurricane Fran's clean-up efforts. Affiant Secretary Moore explains that "employees of the North Carolina Department of Transportation, pursuant to the North Carolina Emergency Operation Plan, performed various activities related to emergency management during this state of emergency, including the removal of debris from State rights-of-way and roadways." He also explains that "the employees of the North Carolina Department of Transportation assisting in the clean-up of Hurricane Fran at the time and place set forth in Plaintiff's affidavit were emergency management workers, pursuant to N.C. Gen. Stat. § 166A-14(d)." Nowhere in the record do defendants claim to be employees of the DOT, nor any other state agency, nor any political subdivision of the State. When Secretary Moore mentions "at the time and place set forth in Plaintiff's affidavit" in his affidavit, he is not referring to the plaintiff in this case, nor do we know what

time or date to which he is referring. Secretary Moore's affidavit simply stated that DOT employees were "emergency management workers."

Defendants offer the "Proclamation of State of Emergency by the Governor of the State of North Carolina" which was issued 5 September 1996, as further evidence to support their position. Defendants also mention in their brief that

> [t]he President's declaration of a major disaster pursuant to the Stafford Act enabled the United States government through the Federal Emergency Management Agency and related federal governmental entities to provide Federal assistance to the State of North Carolina, as requested by Governor Hunt. *See Federal Register*, September 23, 1996, Volume 61, No. 185 (President's Major Disaster Declaration).

Defendants provided in the record Exhibit 3 which consists of 47 pages of the North Carolina Emergency Operations Plan ("Plan"). In the Plan, emergency management operations and activities are outlined. "Each county in North Carolina is responsible for Emergency Management in its jurisdictional boundaries and will conduct emergency operations according to their plans and procedures." Once a disaster is beyond the capabilities of the counties, any "requests for State and/or Federal assistance will be made through the appropriate State Area Office . . . ." At the state level, all debris removal activities are coordinated by "Public Works and Engineering," utilizing the "Department of Crime Control and Public Safety" as its primary agency. Various additional agencies provide support.

The Plan gives the DOT the lead role and primary responsibility for debris removal. If and when further assistance is necessary from the federal government, the Plan states that the "Department of Defense (DOD) has designated the United States Army Corps of Engineers (USACE) as the primary agency for . . . Public Works and Engineering." Also, six federal agencies are listed to provide assistance in debris removal, including the Army Corps.

Defendants argue in their brief that since the Governor and the President declared a state of emergency and that the Plan provides for federal assistance which may or may not include the Army Corps, and that defendants were in Raleigh removing debris under a contract with the Siboney Corporation, that this conclusively establishes that they were "subject to the order or control of or pursuant

to a request of the State government or any political subdivision thereof." We disagree.

The bare assertion, supported only by two affidavits of defendants, that defendants were subcontractors of a Florida Corporation under contract to provide assistance to the Army Corps, and reference to the Plan is insufficient evidence to support the fact claimed. Furthermore, there is no evidence in the record that the Army Corps was in Raleigh during the aftermath of Hurricane Fran. As such, the evidence presented is insufficient to hold, as a matter of law, that defendants were entitled to summary judgment.

Secretary Moore's affidavit simply says that the "employees of the North Carolina Department of Transportation assisting in the cleanup of Hurricane Fran . . . were emergency management workers . . . ." There is no indication in Secretary Moore's affidavit that the Army Corps was in Raleigh or when DOT employees were working.

There remains a genuine issue of fact as to the relationship between the defendants and the State of North Carolina, any political subdivision thereof, and the Army Corps. An emergency management worker, as defined in the statute, must be "subject to the order or control of or pursuant to a request of the State government or any political subdivision thereof." N.C. Gen. Stat. 166A-14(d). Defendants have failed to meet their burden of producing sufficient evidence to conclusively place them under the protection of G.S. § 166A-14.

### F. N.C. Gen. Stat. § 166A-15

Defendants also contend that G.S. § 166A-15 provides them with additional immunity. In defendants' brief they contend that G.S. § 166A-15 "calls for an additional immunity for private entities providing personal property to aid in emergency management operations." Defendants then cite the statute without any further discussion.

The Statute entitled "No private liability" provides that

[a]ny person, firm or corporation owning or controlling real or personal property who, voluntarily or involuntarily, knowingly or unknowingly, with or without compensation, grants a license or privilege or otherwise permits or allows the designation or use of the whole or any part or parts of such real or personal property for the purpose of sheltering, protecting, safeguarding or aiding in any way persons shall, together with his successors in interest,

if any, not be civilly liable for the death of or injury to any person or the loss of or damage to the property of any persons where such death, injury, loss or damage resulted from, through or because of the use of the said real or personal property for any of the above purposes.

N.C. Gen. Stat. § 166A-15 (1977) (emphasis added).

Defendants have not presented evidence in the record to suggest that they were "sheltering, protecting, safeguarding or aiding in any way persons." *Id.* Defendant Petty's affidavit states that the accident occurred "on Litchford Road while I was returning to the aforementioned neighborhood from unloading a truckload of debris." He further explains that "[a]t the time of the accident, I was attempting to turn left across the southbound lane . . . into the neighborhood to return to the crew with whom I was assisting in our debris removal efforts." Genuine issues of fact remain as to defendants' efforts in "sheltering, protecting, safeguarding or aiding in any way persons." *Id.* The trial court properly denied summary judgment because genuine issues of material facts remain.

Affirmed.

Chief Judge EAGLES and Judge McGEE concur.