Tong v. Dunn; Powell v. Dunn, 2016 NCBC 49.

STATE OF NORTH CAROLINA

COUNTY OF ORANGE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 1522; 13 CVS 1318

SIU S. TONG, )
)
            Plaintiff, )
)
     v. )
)
DAVID DUNN, TIMOTHY )
KRONGARD, ED MASI, SOPHIA )
WONG, and JANET WYLIE, )
)
            Defendants. )
)

ORDER & OPINION

DAVID J. POWELL, Jr., et al., )
)
            Plaintiffs, )
)
     v. )
)
DAVID DUNN; TIMOTHY )
KRONGARD; ED MASI; SOPHIA )
WONG; and JANET WYLIE, )
)
            Defendants. )
)
)

{1}     THIS MATTER is before the Court on Defendants' Motion for Summary Judgment on the Statute of Limitations Defense ("Motion") filed in these two consolidated lawsuits.  For the reasons explained below, the Motion is GRANTED.

     *Alston & Bird LLP by Michael Kaeding and Gregg E. McDougal for Defendants.*

     *Poyner Spruill, LLP by Steven B. Epstein for Plaintiffs.*

Gale, Chief Judge.

## I. INTRODUCTION

{2} The forty-two Plaintiffs in these two consolidated cases either are former Engineous, Inc. ("Engineous") common shareholders or are former holders of Engineous common stock options. Their claims arise from the merger of Engineous with ENG Acquisition, Inc. ("ENG"), a subsidiary of Dassault Systèmes Simulia Corporation ("Dassault") (the "Merger"). Plaintiffs complain that the Merger was unfair because it delivered no value to the common shareholders but guaranteed preferential payments to certain preferred shareholders, some of whom are Defendants in this action.

{3} Defendants have consistently maintained that Plaintiffs' claims are time-barred.[1] They initially presented their statute-of-limitations defense through a motion for judgment on the pleadings. In ruling on that earlier motion, the Court determined that the briefing and argument suggested the existence of factual disputes that impacted Defendants' limitations defense, so the Court permitted limited discovery on that issue. That discovery has been completed, and the material facts are undisputed.

{4} For Plaintiffs to prevail on the Motion, their claims must have accrued within the controlling limitations period. The parties disagree as to the source of law that must guide the Court's consideration. Plaintiffs contend that North Carolina law applies, because the application of a statute of limitations is a procedural issue that should be governed by the law of the forum state. Defendants contend that Delaware law should apply, because the internal-affairs doctrine, which all parties agree applies to the substantive claims, should trump more-general procedural requirements. The Court need not resolve any such conflict-of-

---

[1] This Order & Opinion is limited to addressing Defendants' defense that Plaintiffs' claims are time-barred. For further detail on other issues in this action, refer to the North Carolina Court of Appeals' 2013 decision and this Court's earlier orders. *See Tong v. Dunn*, 231 N.C. App. 491, 752 S.E.2d 669 (2013), *rev'g* No. 11 CVS 1522, 2012 NCBC LEXIS 31 (N.C. Super. Ct. May 18, 2012); *Powell v. Dunn*, No. 13 CVS 1318, 2014 NCBC LEXIS 3 (N.C. Super. Ct. Jan. 28, 2014); *Tong v. Dunn*, No. 11 CVS 1522, 2012 NCBC LEXIS 16 (N.C. Super. Ct. Mar. 9, 2012).

law issues because it concludes, after thorough consideration, that Plaintiffs' claims are time-barred under the laws of both states.

## II.   PARTIES

{5}    Plaintiffs were either common shareholders of Engineous or holders of options to purchase Engineous common shares.  Plaintiff Sui Tong ("Tong") was a cofounder, former director, and common shareholder of Engineous.  Tong resigned from his director position while the Merger was under consideration.

{6}    Defendants David Dunn ("Dunn"), Timothy Krongard ("Krongard"), Ed Masi ("Masi"), Sophia Tsai[2] ("Tsai") and Janet Wylie ("Wylie") were Engineous directors leading up to and during the time of the Merger.  Wylie was Engineous's CEO, and Dunn, Krongard, and Tsai were affiliated with entities that had invested in Engineous as preferred shareholders.

{7}    Engineous was a software company organized under the laws of Delaware, with a principal place of business in Wake County, North Carolina.

{8}    Dassault is a publicly traded French company.

## III.   PROCEDURAL HISTORY

{9}    This litigation consists of two related lawsuits:  *Tong v. Dunn*, No. 11 CVS 1522 (N.C. Super. Ct. filed July 20, 2011) and *Powell v. Dunn*, No. 13 CVS 1318 (N.C. Super. Ct. filed Aug. 1, 2013).

{10}    The Complaint in *Tong* was filed on July 20, 2011, and alleged claims for breach of fiduciary duty against Defendants and aiding-and-abetting breach of fiduciary duty against ENG and Engineous.  *Tong* was designated a mandatory complex business case on August 26, 2011, and assigned to the undersigned on September 2, 2011.

{11}    The Court dismissed Plaintiffs' aiding-and-abetting claims against ENG and Engineous on March 19, 2012, based on the doctrine of intracorporate immunity, *Tong*, 2012 NCBC LEXIS 16, at *17–20, and dismissed Tong's claims for

---

[2] Formerly Sophia Wong.

breach of fiduciary duty against Defendants on May 18, 2012, holding that the claims were barred by the res judicata effect of Tong's dismissal of a prior action, *Tong*, 2012 NCBC LEXIS 31, at \*20–21. The remaining Plaintiffs voluntarily dismissed their other claims without prejudice on August 6, 2012, and Tong appealed the Court's dismissal of his breach-of-fiduciary-duty claim. On December 17, 2013, the North Carolina Court of Appeals reversed this Court's dismissal of Tong's claim and remanded the breach-of-fiduciary-duty claim to this Court for further proceedings. *See Tong*, 231 N.C. App. at 503, 752 S.E.2d at 677. Tong is the only remaining Plaintiff in *Tong*, and ENG and Engineous are no longer Defendants in that litigation.[3]

{12}     The Plaintiffs that voluntarily dismissed their claims without prejudice in *Tong*, then filed *Powell* on August 1, 2013, alleging claims for breach of fiduciary duty and unfair or deceptive trade practices ("UDTP") against Defendants based on the same factual allegations they previously stated in *Tong*. *Powell* was designated a mandatory complex business case on August 19, 2013, and assigned to the undersigned on August 21, 2013.

{13}     On January 28, 2014, the Court granted in part Defendants' motion for judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rules"), dismissing Plaintiffs' UDTP claims but reserving its ruling on the statute-of-limitations issue until after the completion of limited discovery and supplemental briefing.

{14}     The Court consolidated *Powell* and *Tong* on February 27, 2014.

{15}     The Motion has been fully briefed and argued and is ripe for decision.

## IV.     FACTS

{16}     The Court does not make findings of fact on a motion for summary judgment, but it may "articulate a summary of the material facts which [it]

---

[3] The Court's order dismissing Plaintiffs' claims against ENG and Engineous became a final judgment when the remaining Plaintiffs dismissed their claims without prejudice on August 6, 2012. *See* N.C. R. Civ. P. 54(b). Plaintiffs did not appeal that order.

considers are not at issue and which justify entry of judgment." *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 165 (1975). Here, the parties base their positions on an uncontested statement of facts, which is summarized below.

{17}    Tong was a member of the Engineous board of directors in 2006, when the board retained Wachovia to explore selling Engineous. Between 2008 and 2009, four potential buyers expressed interest, two of which engaged in a bidding process. In April 2008, one of the two potential buyers, Dassault, delivered a letter of intent to Engineous to purchase the company for approximately $40 million. Dassault and Engineous negotiated merger terms between April 2008 and June 2008. During that period, Tong objected to the Merger because the proposed purchase price yielded no value for the common shareholders, who would be "washed out" after the Merger closed. Tong resigned from the Engineous board before it approved the Merger.

{18}    The Engineous board held a special meeting on June 16, 2008, at which the board voted and unanimously approved the Merger. The Dassault board of directors approved the Merger on the same day, and Engineous and Dassault executed the Merger Agreement. Although the Merger required the further approval of a supermajority of Engineous's preferred shareholders and a majority of its preferred and common shareholders (voting together on an as-converted basis), the required majorities had entered into binding voting agreements on or before June 16, 2008, to vote in favor of the Merger.

{19}    The Merger Agreement provided that incentive payments would be made to certain Engineous employees to entice those employees to remain with the surviving entity after the Merger closed. The terms of the Merger Agreement and the terms that governed shareholder liquidation preferences in Engineous's corporate charter worked together in such a way that, by operation of math, the common shareholders would not receive any of the $40 million of cash consideration that Dassault was to pay in connection with the Merger. Instead, the common

shareholders' shares would be canceled and the shareholders would receive no ownership interest in the surviving entity.

{20} The Engineous board sent an information statement to Engineous's common shareholders on June 18, 2008, which:

(1) advised the shareholders that the board had approved the Merger, provided a summary of the Merger terms, and included a copy of the Merger Agreement;

(2) indicated that Engineous's common shareholders would receive no consideration for their shares as a result of the Merger and that their Engineous shares would be canceled;

(3) indicated that certain directors and officers have interests, including incentive payments and retention agreements, that may have made them more likely to vote in favor of the Merger;

(4) disclosed that certain directors, including Dunn, Krongard, and Wong, stood to benefit from the transaction as a result of holding preferred shares; and

(5) provided that the Engineous certificate of incorporation would be amended to adjust the liquidation preferences of certain classes of preferred shares so shareholders of those preferred shares would bear the cost of the incentive payments.

{21} After they received the information statement on June 18, 2008, various common shareholders, including several of the Plaintiffs, expressed their dissatisfaction with the Merger, complained that the board had advanced the interests of the preferred shareholders over those of the common shareholders, and threatened legal action to prevent the Merger. On June 27, 2008, Powell wrote a letter to Defendants and members of Engineous's and Dassault's management. The letter asserted that the board had unfairly approved the Merger terms without due regard for the interests of the common shareholders. On July 7, 2008, Tong communicated to the corporate secretary that he intended to pursue an appraisal remedy under Delaware law, but Tong ultimately did not pursue such a remedy.

{22}    Engineous held a special shareholders' meeting to vote on the Merger on July 8, 2008, at which shareholders cast votes in accordance with the voting agreements that they had executed before the board approved the Merger terms on June 16, 2008.

{23}    On July 14, 2008, Tong notified Dassault's management that he would not sign the release on which his incentive payment was conditioned.  On July 17, 2008, Tong and Plaintiff Adam Young communicated regarding a potential attorney demand letter that would be sent on behalf of all common shareholders.  The letter was sent the next day.  It advised that if the Merger closed, the common shareholders would take legal action to seek a remedy for Engineous's and the board's alleged self-dealing and breaches of fiduciary duties.

{24}    On July 18, 2008, the board and the preferred and common shareholders approved an amendment to Engineous's corporate charter to adjust the preferred shareholders' liquidation preferences.  The amendment was different from the amendment that had been disclosed in the information statement, but neither the amendment nor the alteration to the amendment changed the effect of the Merger on the common shareholders.  There is no evidence of any other alterations being made to the board-approved Merger terms.

{25}    No one filed suit to enjoin the Merger.  The Merger closed on July 21, 2008.

{26}    Plaintiffs instituted this litigation on July 20, 2011, less than three years after the Merger closed on July 21, 2008, but more than three years after the Engineous board of directors approved the Merger terms and executed the Merger Agreement on June 16, 2008, and more than three years after the Merger was approved by shareholder vote on July 8, 2008.

## V.    ANALYSIS

{27}    The Court must view all evidence in the light most favorable to Plaintiff.  *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001).  Where, as here, the facts are undisputed, summary judgment "is designed to eliminate the

necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim of a party is exposed." *Id.* at 650, 548 S.E.2d at 707.

{28}  The parties agree that the internal-affairs doctrine dictates that Delaware, Engineous's state of incorporation, provide the law that governs the substantive elements of Plaintiffs' breach-of-fiduciary-duty claims against Engineous's former directors. *See Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680–81, 657 S.E.2d 55, 63 (2008).  Defendants argue that the internal-affairs doctrine should also direct the Court to apply Delaware's law related to Delaware's statute of limitations.  Plaintiffs argue, however, that a limitations period is a procedural matter that is controlled by the law of the forum—in this case North Carolina—and that the suit is timely brought under North Carolina law even if it might be time-barred under Delaware law.

{29}  The Court has reviewed both North Carolina's and Delaware's (1) requirements to bring substantive claims for breach of fiduciary duty, (2) statutes of limitations, and (3) rules governing the accrual of a cause of action.  Having done so, the Court concludes that Plaintiffs' claims are barred regardless of which state's law provides the controlling limitations period or governs the time at which Plaintiffs' claims accrued.  Thus, the Court does not need to decide whether the internal-affairs doctrine should override the default rule that the limitations period of the forum state controls. *See Boudreau v. Baughman*, 322 N.C. 331, 335, 340 368 S.E.2d 849, 854, 857 (1988) (noting that "procedural rights are determined by lex fori, the law of the forum," and that "[o]rdinary statutes of limitation are clearly procedural").

{30}  Both North Carolina law and Delaware law apply a three-year statute of limitations to a breach-of-fiduciary-duty claim. *See* N.C. Gen. Stat. § 1-52(1) (2015); Del. Code Ann. tit. 10, § 8106(a) (2015); *see also Marzec v. Nye*, 203 N.C. App. 88, 93, 690 S.E.2d 537, 541 (2010) (applying the three-year statute of limitations found in subsection 1-52(1) of the General Statutes to a breach-of-fiduciary-duty claim).  Plaintiffs contend that, under North Carolina law, the claims did not accrue at the time the board voted on the Merger, because Plaintiffs did not

suffer actual damage until the Merger closed.  The Court concludes that this is not a proper construction of North Carolina law as applied to the facts of this case.

### A. Delaware's Accrual Rule Directs that Plaintiffs' Breach-of-Fiduciary-Duty Claims Accrued When the Board Wrongfully Approved the Merger.

{31}   Delaware courts have stated clearly that a claim for breach of fiduciary duty "accrues at the moment of the wrongful act—not when the harmful effects of the act are felt—even if the plaintiff is unaware of the wrong." *In re Coca-Cola Enters., Inc. S'holders Litig.*, No. 1927-CC, 2007 Del. Ch. LEXIS 147, at *18 (Del. Ch. Oct. 17, 2007), *aff'd sub nom. Int'l Bhd. Teamsters v. Coca-Cola Co.*, No. 601, 2007, 2008 Del. LEXIS 274 (Del. June 20, 2008).  The Delaware Court of Chancery succinctly summarized Delaware's accrual rule in *Albert v. Alex. Brown Management Services, Inc.*:

> The law in Delaware is crystal clear that a claim accrues as soon as the wrongful act occurs.  This is so because the plaintiffs were harmed as soon as the alleged wrongful acts occurred.  Whether or not the plaintiffs could have sued for damages is not dispositive as to whether the claim accrued, since, as soon as the alleged wrongful act occurred, the plaintiffs could have sought injunctive relief.

C.A. Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 100, at *58–59 (Del. Ch. June 29, 2005) (footnote omitted).  The rationale underlying the Delaware courts' decisions is that a putative plaintiff who complains of wrongful board action should be encouraged to promptly seek redress rather than waiting to determine the extent of any damage resulting from the wrongful action.  *See In re SunGard Data Sys., Inc. S'holder Litig.*, C.A. No. 1221-N, 2005 Del. Ch. LEXIS 105, at *5 (Del. Ch. July 8, 2005); *see also Albert*, 2005 Del. Ch. LEXIS 100, at *60 (noting that a putative plaintiff should not be encouraged to wait and see if they benefit from a wrongful act before bringing suit).  Thus, under Delaware law, a claim for breach of fiduciary duty can accrue before a wrongful act causes a putative plaintiff to suffer damages, because the wrongful act causes harm to the putative plaintiff as soon as the act is committed.

{32}    Under the Delaware accrual rule, the board's approval of the Merger terms on June 16, 2008, was the wrongful act, and Plaintiffs' claims accrued on that date.  Thus, any claims arising from the Merger must have been brought in Delaware within three years of June 16, 2008.  Plaintiffs' breach-of-fiduciary-duty claims were brought on July 20, 2011, and were therefore untimely under Delaware law.

## B.  Plaintiffs' Action Was Untimely Under North Carolina's Accrual Rule.

{33}    The leading North Carolina case on the accrual of a claim is the North Carolina Supreme Court's opinion in *Shearin v. Lloyd*, which stated that

> [i]t is a firmly established rule that with certain exceptions, such as in the cases of covenants and indemnity contracts, the occurrence of an act or omission, whether it is a breach of contract or of duty, whereby one sustains a direct injury, however slight, starts the statute of limitations running against the right to maintain an action.  It is sufficient if nominal damages are recoverable for the breach or for the wrong, and it is unimportant that the actual or substantial damage is not discovered or does not occur until later.  However, it is well settled that where an act is not necessarily injurious or is not an invasion of the rights of another, and the act itself affords no cause of action, the statute of limitations begins to run against an action for consequential injuries resulting therefrom only from the time actual damage ensues.

246 N.C. 363, 367, 98 S.E.2d 508, 511–12 (1957) (quoting 34 Am. Jur. *Limitation of Actions* § 115 (1936)).  The supreme court continued:

> [A]s stated by Walker, J., in *Mast v. Sapp*: 'When the right of the party is once violated, even in ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete.'  In such case, as stated by Walker, J.: 'When a cause of action once accrues there is a right, as of the time of the accrual, to all the direct and consequential damages which will ever ensu—that is, all damages not resulting from a continuing fault which may be the foundation of a new action or of successive actions— and the law will in such a case take into consideration not only damage already suffered, but that which will naturally and probably be produced by the wrongful act . . . .'

*Id.* at 367–68, 98 S.E.2d at 512 (citations omitted) (quoting *Mast v. Sapp*, 140 N.C. 533, 538–39, 540, 53 S.E. 350, 352 (1906)).  Citing *Shearin*, the supreme court later

explained in *Jewell v. Price* that the time at which actual or substantial damage occurs is not dispositive as to the timing of the accrual of a claim that is based on a violation of a right, as long as the "whole injury results from the original tortious act." 264 N.C. 459, 461, 142 S.E.2d 1, 3 (1965) (citing *Shearin*, 246 N.C. at 367, 98 S.E.2d at 511–12).

{34} In *Shearin*, the supreme court also provided an exception to the general accrual rule. *See Shearin*, 246 N.C. at 367, 98 S.E.2d at 511. The exception applies when the act complained of is not by itself a violation of rights or a breach of duties and damage does not occur until later. *See id.* Plaintiffs attempt to take advantage of this exception by arguing that the board's action was not "necessarily injurious" until the Merger actually closed because the board could have taken action before that time to eliminate the potential harm to Plaintiffs. *Id.* But that argument fails because *Shearin*—as interpreted in *Jewell*—provides that any violation of a party's rights or of a duty owed to another party constitutes an injury, irrespective of whether the party can make a claim for only nominal damages at that time.[4]

{35} Substantive Delaware law specifies that a board's failure to consider the best interests of the common shareholders in a merger transaction constitutes a violation of the board's duty. *See In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 51–52 (Del. Ch. 2013) (discussing a merger scenario that was markedly similar to the instant case). That failure, if it occurred at all, occurred when the board approved the Merger Agreement. Plaintiffs' underlying cause of action, which must be evaluated using Delaware law, "spr[ang] into existence" at that time. *Shearin*, 246 N.C. at 367, 98 S.E.2d at 512 (quoting *Mast*, 140 N.C. at 540, 53 S.E. at 352).

---

[4] Even if the Court was to determine that a breach-of-fiduciary-duty claim arising from a merger accrues only after a plaintiff is able to recover damages, both Delaware and North Carolina award at least nominal damages if a plaintiff can prove that his rights have been violated or impaired by a defendant. *See, e.g.*, *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773 (Del. 2006) (noting that nominal damages are available when a shareholder's economic interests or voting rights have been impaired); *Potts v. Howser*, 274 N.C. 49, 61, 161 S.E.2d 737, 747 (1968) (noting that nominal damages are granted in recognition that a legal right has been invaded).

{36} Further, Plaintiffs identified a specific harm that occurred when the board approved the merger term: the elimination of the value of the common shares. The fact that the full nature, extent, or cost of the injury was unknown at the time the board approved the merger did not prevent or delay the accrual of Plaintiffs' claims.

{37} This is not a case where a board conditionally approved a merger and the close of that merger was dependent on future events that were uncertain or unknown at the time of the approval. Likewise, this is not a transaction where a common shareholder had to await the Merger's closing to determine whether the closing price was so low as to result in damages to the shareholder. The terms of the Merger eliminated whatever value Plaintiffs' common stock might have had.

{38} Plaintiffs nevertheless argue that the Merger represents such a contingent transaction because the terms of the Merger allowed for the corporate charter to be amended to modify the allocation of certain classes of preferred shareholders' responsibility to absorb the costs of the incentive payments. But there were no Merger provisions that allowed for amendments to the terms of which Plaintiffs complain, and the alterations that were implemented did not ultimately impact the fact that the common shareholders' interests were extinguished. Also, when the board approved the merger, shareholders constituting the majority required for the Merger's approval were already contractually bound to vote in favor of the Merger.

{39} Even when the evidence is viewed in the light most favorable to Plaintiffs, there is no evidence before the Court to indicate that the shareholder vote on July 8, 2008, was anything other than a foregone conclusion that resulted from the board's original approval of the Merger. There are no reasonable inferences that lead to a different result. *See Ray v. Lewis Hauling & Excavating, Inc.*, 145 N.C. App. 94, 97, 549 S.E.2d 237, 239 (2001) (requiring all evidence to be viewed in the light most favorable to the nonmoving party, and for all reasonable inferences to be drawn in favor of the nonmovant). Regardless, even if it could reasonably be argued that Defendants' wrong was complete on July 8, 2008, when the

shareholders approved the Merger, that also occurred more than three years before Plaintiffs filed their Complaint.

{40}   Thus, under North Carolina law, Plaintiffs claims must have been brought within three years of the board's approval of the Merger terms on June 16, 2008.  Because Plaintiffs' claims for breach of fiduciary duty were brought on July 20, 2011, the claims were untimely under North Carolina law.

## C. The Continuing-Wrong Doctrine Does Not Save Plaintiffs' Claims.

{41}   Plaintiffs argue that, even if their breach-of-fiduciary-duty claims first accrued on June 16, 2008, the continuing-wrong doctrine should apply to toll the running of the statute of limitations until the Merger closed on July 21, 2008.  *See Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003) (noting that the continuing-wrong doctrine can serve to toll the running of a statute of limitations).  Under the continuing-wrong doctrine, a continuing wrong "is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Id.* (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)).

{42}   Here, the alleged wrong occurred when the board approved the Merger terms.  The continuing-wrong doctrine does not save Plaintiffs' claims from being time-barred.

## VI.   CONCLUSION

{43}   The Court holds that, under both North Carolina and Delaware law, Plaintiffs' breach-of-fiduciary-duty claims accrued more than three years before Plaintiffs filed their Complaint.  The claims are therefore time-barred and are DISMISSED WITH PREJUDICE.  This Order & Opinion is a final judgment on all claims.

IT IS SO ORDERED, this the 8th day of July, 2016.

/s/ James L. Gale

James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases